AUTO–OWNERS INSURANCE
COMPANY, Appellant,

v.

Ione FORSTROM, et al., Defendants,

Mark Anthony Heath, et
al., Respondents,

Pablo Ojeda–Napoles, et
al., Respondents,

Heather Tuckee, as parent and natural
guardian of Tanner Ray Heath,
Respondent,

Myron Weege, Jr., as parent and nat-
ural guardian of Myron Weege, III,
and Brianna Weege, Respondent.

No. C8–03–296.

Court of Appeals of Minnesota.

Oct. 7, 2003.

R. Stephen Tillitt, Sara N. Wilson, Gisla-
son & Hunter, L.L.P., Minnetonka, for
appellant.

Richard C. Scattergood, Rider Bennett,
L.L.P., Minneapolis, for respondent Heath.

Daniel J. Heuel, O'Brien & Wolf, L.L.P.,
Rochester, for respondents Ojeda–Na-
poles.

William J. Schmitz, Sieben, Grose, Von
Holtum & Carey, Ltd., Minneapolis, for
respondent Tuckee.

J.D. Haas, Minneapolis, for respondent
Weege.

Considered and decided by HARTEN,
Judge, G. BARRY ANDERSON, Judge,
and WRIGHT, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant Auto–Owners Insurance Com-
pany (Owners) appeals from the district

court's grant of summary judgment in favor of respondents, arguing that (a) the court erred when it concluded that extrinsic evidence could not be considered to determine ownership of a vehicle when interpreting an insurance policy, and (b) genuine issues of material fact precluded summary judgment. We affirm in part, reverse in part, and remand.

## FACTS

On May 13, 2000, the vehicle driven by Mark Heath (Heath), borrowed from Alisha Dennis (Dennis), struck the vehicle occupied by Pablo and Maria Ojeda–Napoles (the Ojeda–Napoles). In April 2001, the Ojeda–Napoles commenced a personal injury suit against Heath and Dennis.

Because Heath did not have an insurance policy issued in his own name, one of the insurance coverage matters addressed after the accident was a dispute as to whether an insurance policy Owners issued to Ione Forstrom, Heath's grandmother with whom he lived, provided coverage for Heath's accident. Forstrom's policy provided insurance for her own automobile, and also provided coverage for other automobiles:

1. **LIABILITY COVERAGE—BODILY INJURY AND PROPERTY DAMAGE**

    a. The Liability Coverage provided for your automobile also applies to an automobile not:

    (1) owned by or furnished or available for regular use to you or anyone living with you . . .

    * * * *

    b. We extend this coverage only:

    (1) to you;

    (2) to relatives who do not own an automobile[.]

Thus, the policy's coverage applied to automobiles driven by Forstrom's relatives who lived in her household and did not own an automobile. In deposition testimony, Heath stated that he "had" a 1991 Oldsmobile Cutlass, but that he did not own it because the vehicle was "in [his] father's name." According to Heath, he was in the process of purchasing the vehicle from his parents and was making payments to them. The vehicle was inoperable on the date of the accident, because a head gasket needed repair. Heath also stated that a 1991 GMC Jimmy registered in his name was totaled prior to his May 2000 accident with the Ojeda–Napoles. The district court record contains a printout dated April 9, 2002 entitled "motor vehicle record display" that refers to a 1991 GMC, and contains language stating "OWNER: HEATH MARK ANTHONY."

On March 12, 2002, the Ojeda–Napoles moved for summary judgment, arguing that because it was inoperable at the time of the accident, the Cutlass did not constitute an automobile for purposes of Forstrom's policy, and therefore Heath was covered by Owners. On April 29, 2002, Owners began a declaratory judgment action, alleging that Owners was not liable for Heath's accident because Heath was not living with Forstrom at the time of the accident and because he was the registered owner of a motor vehicle.

On June 18, 2002, the district court issued an order denying the Ojeda–Napoles' summary judgment motion because the court found that the Cutlass was a "motor vehicle." On September 24, 2002, the Ojeda–Napoles moved for reconsideration of the June 18, 2002 order. On December 13, 2002, the district court issued an order reversing and vacating its June 18, 2002 order, and granting the Ojeda–Napoles' motion for summary judgment. The district court did not reverse its findings with regard to whether the Cutlass qualified as a motor vehicle, but based its decision that

Heath did not own a motor vehicle on the principles announced in *Am. Nat. Gen. Ins. Co. v. Solum*, 641 N.W.2d 891 (Minn. 2002). This appeal by Owners follows.

### ISSUES

I. Did the district court err in concluding that Heath did not own a 1991 Oldsmobile Cutlass for purposes of determining insurance coverage?

II. Did the district court err in concluding that, based on the record before the court, Heath did not own a 1991 GMC Jimmy at the time of the accident?

### ANALYSIS

When reviewing an appeal from an order for summary judgment, this court asks two questions: "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

#### I.

■ Owners argues that the district court erred in concluding that Heath did not own a motor vehicle for purposes of interpreting Forstrom's insurance policy with Owners. Interpretation of statutory law and the language of insurance agreements are both legal issues subject to a de novo standard of review. *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 600 (Minn. 2001).

The key issue here is whether Heath owned an automobile at the time of the accident. Heath had liability coverage under the Forstrom policy only if Heath did not own an automobile when the accident occurred. Although the Cutlass was registered in his father's name, Owners asserts that Heath is the true owner of the vehicle.

Because the language of Forstrom's policy does not define "owner," we look to Minnesota law for guidance. *See Vue v. State Farm Ins. Cos.*, 582 N.W.2d 264, 266 (Minn.1998) (stating that where insurance policy did not define "owner," supreme court looked to statutory law and case law for guidance).

Our analysis begins with Minn.Stat. § 168A.10, part of the Motor Vehicle Certification of Title Act (motor vehicle act), which addresses the presumption of ownership of an automobile based on title. *See Solum*, 641 N.W.2d at 896. "Prior to the enactment of § 168A.10, the fact that an individual's name appeared on the certificate of title as the owner of the vehicle was prima facie evidence of his ownership of the automobile. This presumption of ownership was rebuttable rather than conclusive on the issue of ownership." *Id.* (quoting *Welle v. Prozinski*, 258 N.W.2d 912, 916 (Minn.1977)). But after passage of Minn.Stat. § 168A.10, "the presumption of ownership established by the certificate of title, that [prior to 1971] was generally rebuttable, became for the most part conclusive." *Solum*, 641 N.W.2d at 899. Thus, the motor vehicle act creates a presumption of ownership in the person listed on a vehicle's title. *See id.* at 896 (applying the motor vehicle act to appellant's attempt to establish ownership of vehicle to determine insurance coverage).

There are, however, circumstances in which the presumption may be rebutted by extrinsic evidence of ownership. *See Solum*, 641 N.W.2d at 898 (stating that extrinsic evidence may be used to rebut the presumption of ownership in cases involving both "vicarious liability under the Mo-

tor Vehicle Act and liability under the No Fault Act").

Here, the district court concluded that because a title transfer from Heath's father to Heath did not occur, *Solum* required the court to conclusively presume that Heath did not own the car, and introduction of extrinsic evidence of ownership to rebut the presumption was not permitted. On appeal, Owners argues that the district court should have permitted extrinsic evidence regarding ownership of the Cutlass. Owners argues further that if the appellate court determines that the district court erred regarding Heath's ownership of the Cutlass, then the June 18 order, which denied the Ojeda–Napoles' summary judgment motion, is still in force because it was not expressly reversed in the December 13 order. The Ojeda–Napoles argue that the district court did not err when it concluded that Heath's father was conclusively presumed to be the owner of the Cutlass.

To determine if the present dispute falls into one of the categories where extrinsic evidence is permitted, we must examine *Solum* and the cases upon which it relies. Paul Solum was involved in an accident while driving an uninsured vehicle registered in the name of his wife, Helen. *Solum*, 641 N.W.2d at 893–94. Title to the vehicle had been transferred to Helen from her son, Daniel, who was attempting to avoid seizure of his vehicle as a result of alcohol-related driving offenses. *Id.* The Solums testified that the transfer to Helen was a formality and that they considered Daniel the owner of the vehicle. *Id.* If Daniel Solum owned the vehicle, American was obligated to pay the claim, but if Helen Solum owned it, American was not obligated to cover the accident. *Id.* at 893 & n. 1. American National General Insurance Company (American) sought a declaratory judgment, asserting that because the

vehicle was registered to Helen Solum, American was not obligated to pay the claim under the provisions of the Solums' policy with American. *Id.* at 893. The supreme court ruled that the Solums were precluded from disputing the validity of the title they perfected, because the Solums intended Helen's name to be on the title. *Id.* at 899–900.

The *Solum* court based its decision on precedent that permitted extrinsic evidence in only two limited circumstances. First, "where a transferor who had not complied with the transfer provisions of the Motor Vehicle Act was attempting to avoid vicarious liability," extrinsic evidence was permitted to rebut the presumption of ownership. *Id.* at 897; *see also Welle v. Prozinski*, 258 N.W.2d 912 (Minn.1977). Second, extrinsic evidence is admissible to rebut a liability claim under the compulsory insurance provisions of Minn.Stat. § 65B.48, the Minnesota No Fault Act. *Solum*, 641 N.W.2d at 898; *see also Arneson v. Integrity Mut. Ins. Co.*, 344 N.W.2d 617 (Minn.1984).

Thus, the *Solum* court specifically and clearly noted that there are only two situations where it is permissible to introduce extrinsic evidence to rebut the presumption of ownership: "[F]or purposes of vicarious liability under the Motor Vehicle Act and liability under the No Fault Act." *Solum*, 641 N.W.2d at 898 (citation omitted).

This case does not fall within either of the exceptions discussed in *Solum*. Here, there is no attempt to avoid vicarious liability, and there are no claims involving the no-fault act. Rather, Owners is alleging that it has no obligation under the terms of its policy with Forstrom to provide coverage for Heath's accident. *Solum* clearly limits the use of extrinsic evidence and the circumstances outlined in *Solum* where intrinsic evidence is permit-

ted are not present here. The district court did not err in refusing to consider extrinsic evidence in determining that, as a matter of law, Heath did not own the Cutlass.

Because we conclude that the presumption of ownership may not be rebutted in this case, we need not reach Owners' argument that the June 2002 order should remain in effect. We also need not reach the Ojeda–Napoles' argument that the Cutlass does not constitute a motor vehicle under the no-fault act.

## II.

■ Owners also argues that Heath owned a GMC Jimmy, and therefore, was not covered under Forstrom's policy. The district court stated that it "[did] not have adequate information as to whether or not title to the 1991 [GMC Jimmy] was still registered in Mr. Heath's name after it was totaled. The Court therefore [could not] conclude that Mark Heath owned the 1991 [GMC Jimmy] at the time of the accident." Owners maintains that because the evidence shows that the GMC Jimmy was registered in Heath's name, conclusive ownership of a vehicle has been demonstrated, and thus Owners is entitled to a reversal of the district court's summary judgment order. The Ojeda–Napoles argue that the district court appropriately refused to accept the evidence presented as indisputable proof of ownership. In the alternative, they argue that because the GMC Jimmy was totaled prior to the accident, it was no longer a "motor vehicle."

A genuine issue for trial must be established by substantial evidence. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69–70 (Minn.1997). "[S]ummary judgment is inappropriate when reasonable persons might draw different conclusions from the evidence presented." *Id.* at 69 (citing *Illinois Farmers*

*Ins. Co. v. Tapemark Co.,* 273 N.W.2d 630, 634 (Minn.1978)).

Forstrom's policy states that "[a]utomobile means a private passenger automobile, a truck, truck tractor, trailer, farm implement or other land motor vehicle."

As defined by the no-fault act,

'Motor vehicle' means *every vehicle,* other than a motorcycle or other vehicle with fewer than four wheels, which (a) is *required to be registered pursuant to chapter 168,* and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property, and includes a trailer with one or more wheels, when the trailer is connected to or being towed by a motor vehicle.

Minn.Stat. § 65B.43, subd. 2 (2002) (emphasis added). Minn.Stat. § 168.09, subd. 1 (2002) states that "[n]o * * * motor vehicle, except as is exempted by section 168.012, may be used or operated upon the public streets or highways of the state in any calendar year until it is registered as provided in this section." *Id.*

There are two genuine issues of material fact presented here. First, there is a genuine issue of material fact as to whether the GMC Jimmy, on the date of the accident, was a motor vehicle. Second, the district court rejected appellant's claim that registration of the GMC Jimmy was conclusive on the issue of ownership, concluding that it lacked adequate information to determine whether the Jimmy was registered in Heath's name. But there is no dispute that there is some evidence—in the form of an otherwise unidentified printout; that Heath was the owner of the GMC Jimmy, at least at some point in time. Because the non-moving party in a summary judgment proceeding, in this case, Owners, is entitled to the benefit of

reasonable inferences from the evidence,[1] we conclude there is a material fact question as to ownership of the GMC Jimmy. Therefore, because genuine issues of material fact remain as to the status of the GMC Jimmy, and ownership thereof, we reverse and remand for further proceedings.

## DECISION

The district court did not err when it ruled that extrinsic evidence could not be introduced to rebut the presumption of ownership of the Cutlass, but because material fact issues remain with regard to the GMC Jimmy, we reverse and remand for further proceedings.

**Affirmed in part, reversed in part and remanded.**

1. *See Wagner v. Schwegmann's South Town Liquor, Inc.*, 485 N.W.2d 730, 733 (Minn.App. 1992).