AUTO–OWNERS INSURANCE COMPANY, Appellant,

v.

Ione FORSTROM, et al., Defendants,

**Mark Anthony Heath, et al., Respondents,**

**Pablo Ojeda–Napoles, et al., Respondents,**

**Heather Tuckee, as parent and natural guardian of Tanner Ray Heath, Respondent,**

**Myron Weege, Jr., as parent and natural guardian of Myron Weege, III, and Brianna Weege, Respondent.**

No. C8–03–296.

Supreme Court of Minnesota.

Aug. 5, 2004.

---

* Appointed pursuant to Minn. Const. art. VI, § 2, and Minn.Stat. § 2.724, subds. 1, 2 (2002).

R. Stephen Tillitt, Sara N. Wilson, Gislason & Hunter, L.L.P., Minnetonka, MN, for Appellant.

Daniel J. Heuel, O'Brien & Wolf, L.L.P., Rochester, MN, for Respondents Pablo Ojeda–Napoles and Maria Ojeda–Napoles.

J.D. Haas, Minneapolis, MN, for Respondents Brianna Weege and Myron Weege.

Richard C. Scattergood, Rider Bennett, L.L.P., Minneapolis, MN, for Respondents Mark Heath and Alisha Dennis.

William J. Schmitz, Sieben, Gross, Von Holtum & Carey, Ltd., Minneapolis, MN, for Respondent Tanner Heath.

## OPINION

PAGE, Justice.

In this case, Auto–Owners Insurance Company (Auto–Owners)[1] asks us to determine whether extrinsic evidence of ownership of a motor vehicle may be introduced to rebut the presumption that the person named in the vehicle's certificate of

---

1. The parties have variously used Auto–Owners and Owners in the caption. The district court complaint and the court of appeals' opinion reference Auto–Owners, while the briefs to this court reference Owners. For purposes of clarity, we will use the caption from the initial district court complaint.

title is the vehicle's true owner. Because we find no basis to permit the introduction of extrinsic evidence, we reject Auto–Owners' claim and affirm the court of appeals.

The facts of this case are not in dispute. On May 13, 2000, Mark Heath was operating a 1988 Chevrolet Beretta owned by Alisha Dennis with her permission. At or near the intersection of County Road 44 and U.S. Highway 63, Dennis's vehicle ran a stop sign and collided with Pablo Ojeda–Napoles'[2] vehicle. In April 2001, the Ojeda–Napoles commenced a personal injury lawsuit against Heath and Dennis. Metropolitan Life Insurance Company insured Dennis's vehicle and, in response to the lawsuit, Metropolitan Life deposited the liability limits of Dennis's policy with the district court.

At the time of the accident, Heath resided with his grandmother, Ione Forstrom, and had no automobile insurance policy in his own name. Forstrom's Auto–Owners policy provided coverage for relatives living with her who did not own an automobile as long as the automobile the relative was driving at the time a claim for coverage arose was not available for her or the relatives' regular use.[3] In deposition testimony, Heath stated that he "had" a 1991 Cutlass at the time of the accident, but that he did not own it because the vehicle was "in [his] parents' name." The Cutlass,

although in Heath's possession, was inoperable due to a broken head gasket and was uninsured. According to Heath, he was in the process of purchasing the Cutlass from his parents and was making payments to them.

On February 13, 2002, Auto–Owners brought a declaratory judgment action seeking a determination that the Auto–Owners policy issued to Forstrom did not provide excess liability coverage for Heath's involvement in the motor vehicle accident with the vehicle owned and operated by Pablo Ojeda–Napoles. Auto–Owners took the position that coverage was excluded because Heath owned the Cutlass and Forstrom's policy excluded coverage for relatives living with the insured who owned an automobile. On March 12, 2002, the Ojeda–Napoles moved for summary judgment, asserting that because the Cutlass was temporarily inoperable it was not required to be registered pursuant to Minnesota Statutes chapter 168 and therefore was not a "motor vehicle" within the meaning of Minn.Stat. § 65B.43, subd. 2 (2002), of the No–Fault Act. Based on that assertion, the Ojeda–Napoles argued that Heath was covered by the policy issued to his grandmother. On June 18, 2002, the district court denied the motion for summary judgment, finding that the

2. Pablo and his wife, Maria Ojeda–Napoles, are both parties to the declaratory judgment action. In this opinion, they will be referred to collectively as "the Ojeda–Napoles."

3. The relevant policy language provides:

SECTION IV—INDIVIDUAL NAMED INSURED
* * * *
1. LIABILITY COVERAGE—BODILY INJURY AND PROPERTY DAMAGE
    a. The Liability Coverage provided for your automobile also applies to an automobile not:

(1) owned by or furnished or available for regular use to you or anyone living with you.
* * * *
b. We extend this coverage only:
(1) to you;
(2) to relatives who do not own an automobile.
A "[r]elative" is defined in the policy as "a person who resides with you and is related to you by blood, marriage or adoption." An "[a]utomobile" is defined in the policy as "a private passenger automobile, a truck, truck tractor, trailer, farm implement or other land motor vehicle."
(Emphasis omitted.)

Cutlass was a motor vehicle under the No–Fault Act and therefore the exclusion in Forstrom's policy applied.

The Ojeda–Napoles sought reconsideration of the court's order based on this court's decision in *American National General Insurance v. Solum*, 641 N.W.2d 891 (Minn.2002), which was filed in April 2002. The district court reheard the arguments, vacated its earlier order, and granted summary judgment to the Ojeda–Napoles. The court found that Heath did not own the Cutlass on the date of the accident because he was not the registered owner of the vehicle. In making that finding, the district court, relying on *Solum*, refused to consider extrinsic evidence rebutting the presumption of ownership.[4]

On appeal, the court of appeals affirmed in part, reversed in part, and remanded.[5] *Auto-Owners Ins. Co. v. Forstrom*, 669 N.W.2d 617, 622 (Minn.App.2003). With respect to ownership of the Cutlass, the court of appeals, based on its reading of *Solum*, affirmed the district court's grant of summary judgment. *Forstrom*, 669 N.W.2d at 620–21. The court of appeals interpreted *Solum* as a case "specifically and clearly not[ing] that there are only two situations where it is permissible to introduce extrinsic evidence to rebut the presumption of ownership: '[F]or purposes of vicarious liability under the Motor Vehicle Act and liability under the No Fault Act.'" *Forstrom*, 669 N.W.2d at 620 (alteration in original) (quoting *Solum*, 641 N.W.2d at 898).

■ This case presents two questions for our review: (1) whether, on the facts presented, our decision in *Solum* should be read to preclude the use of extrinsic evi-

dence to rebut the presumption of ownership of the Cutlass; and (2) whether the Cutlass, though disabled, was a motor vehicle within the meaning of Minn.Stat. § 65B.43, subd. 2 (2002). Because we conclude that the use of extrinsic evidence to rebut the presumption of ownership of the Cutlass is precluded, we affirm.

■ Review of a summary judgment award consists of determining whether there are any genuine issues of material fact and whether the district court erred in applying the law to the facts. *Jorgensen v. Knutson*, 662 N.W.2d 893, 897 (Minn. 2003). When a district court grants summary judgment after applying the law to undisputed facts, the legal conclusion is reviewed de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn. 1998). Statutory construction and the interpretation of the language of insurance contracts are legal issues also subject to de novo review. *Vue v. State Farm Ins. Cos.*, 582 N.W.2d 264, 265 (Minn.1998).

In *Solum*, this court engaged in a painstaking analysis of four of our earlier decisions addressing the admissibility at trial of extrinsic evidence rebutting the presumption of ownership of a motor vehicle established under the Motor Vehicle Certificate of Title Act, Minn.Stat. § 168A.10 (2002) (Motor Vehicle Act). Those cases were *Vue*, *Bank North v. Soule*, 420 N.W.2d 598 (Minn.1988), *Arneson v. Integrity Mutual Insurance Co.*, 344 N.W.2d 617 (Minn.1984), and *Welle v. Prozinski*, 258 N.W.2d 912 (Minn.1977). *Solum*, 641 N.W.2d at 896–99. In reconciling those cases, we stated:

[T]he Motor Vehicle Act was intended to provide a single filing system of vehicle

---

4. In making this finding, the court did not reverse its earlier finding that the Cutlass, though disabled, was a motor vehicle within the meaning of Minn.Stat. § 65B.43, subd. 2.

5. The court remanded with respect to the ownership of a second motor vehicle not at issue here.

498

registration on which all parties could rely for determining who was the owner of a motor vehicle, similar to the Torrens system for the registration of title to real estate. *Thus, the presumption of ownership established by the certificate of title, that 30 years ago was generally rebuttable, became for the most part conclusive. The ability to rebut ownership of the vehicle was "greatly circumscribed," available only to prove the identity of the true owner in cases where the seller-transferor failed to comply with the transfer requirements of the Act and sought to avoid liability under the Safety Responsibility Act or determine rights and responsibilities relating to uninsured motorist coverage. In these limited instances we have held that the party challenging title was not precluded from presenting extrinsic evidence to establish that ownership was in fact vested in another.*

*Id.* at 899 (citations omitted) (emphasis added).

Auto–Owners argues that this language from *Solum* does not create a bright-line rule as to when extrinsic evidence can be used to determine a motor vehicle's ownership and that *Solum* should simply "be viewed as a unique and fact specific decision that rejected an attack on the integrity of the [Motor Vehicle Act]." Based on those arguments, Auto–Owners contends that the court of appeals "erred as a matter of law in narrowly interpreting the *Solum* case and overlooked the case law upon which *Solum* is based that allows for the submission of extrinsic evidence in the present case." Acknowledging that this case does not fall within the two exceptions identified in *Solum*, Auto–Owners argues that, because this case is factually similar to *Arneson* and *Vue*, both of which allowed the introduction of extrinsic evidence, there is a basis for permitting the use of extrinsic evidence in this case. We disagree.

The primary similarity Auto–Owners identifies is the fact that *Arneson* and *Vue* involve tort or tort-like claims. While it is true that the claim underlying this declaratory judgment action involves a tort or tort-like claim, critical factual differences exist. First, *Arneson and Vue* both involved claims requiring a determination of rights and responsibilities under the uninsured motorist provisions of the No–Fault Act. *Arneson*, 344 N.W.2d at 619; *Vue*, 582 N.W.2d at 264–65. Therefore, both clearly fit within the uninsured motorist coverage exception carved out in our earlier cases as discussed in *Solum*. In that respect, the fact that the underlying claim involves a tort or tort-like claim is meaningless because the claim does not involve such a determination. More importantly, the vehicle in question in both *Arneson* and *Vue* was the vehicle involved in the accident giving rise to the claim. *Arneson*, 344 N.W.2d at 618; *Vue*, 582 N.W.2d at 265. Here, the vehicle in question is neither the vehicle involved in the accident giving rise to the claim nor the vehicle covered by the insurance policy from which coverage is being sought.

Auto–Owners also claims that this case is similar to the cases analyzed in *Solum* that involved noncompliance with the transfer provisions of the Motor Vehicle Act. While this case does involve noncompliance with the Motor Vehicle Act, noncompliance alone will not carry the day. As the language from *Solum* indicates, extrinsic evidence has been permitted in cases involving noncompliance *and* either an effort to determine rights and responsibilities relating to uninsured motorist coverage *or* a seller's attempt to avoid liability under the Safety Responsibility Act. Here, as noted above, the underlying claim does not require a determination of rights

and responsibilities relating to uninsured motorist coverage. Further, this is not a case in which the seller is attempting to avoid liability under the Safety Responsibility Act. In fact, the person listed on the Cutlass's certificate of title, Heath's father, has no interest in this litigation and the Ojeda–Napoles cannot bring a vicarious liability tort claim against Heath's father because he did not own or have any other connection to the vehicle that was involved in the accident.

Given these dissimilarities, we conclude that the fact that the underlying claim here, like the claims in *Arneson* and *Vue*, involves a tort or tort-like claim and the fact that this case involves noncompliance with the transfer provisions of the Motor Vehicle Act do not provide a basis for permitting the use of extrinsic evidence on the facts presented.[6] We therefore conclude that the district court and the court of appeals were correct when they precluded the introduction of extrinsic evidence to rebut the presumption that Heath's father, the individual in whose name the Cutlass was registered at the time of the accident, was its owner.[7]

Affirmed.

MEYER, J., took no part in the consideration or decision of this case.

**6.** We note that Auto–Owners presents no policy basis supporting the creation of additional exceptions to the rule set out in *Solum*.

**7.** Having concluded that the district court properly excluded extrinsic evidence rebut-

ting the presumption of ownership of the Cutlass, we have no need to decide whether the Cutlass qualified as a motor vehicle under the No–Fault Act.