**In re Richard Elmer LIEN and Patricia Marie Lien, Debtors.**

**Robert R. Kanuit, Trustee, Plaintiff,**

**v.**

**United States Department of Treasury Internal Revenue Service, Defendant.**

Bankruptcy No. 07–50200.
Adversary No. 07–5031.

United States Bankruptcy Court, D. Minnesota.

Sept. 11, 2009.

Robert R. Kanuit, Kanuit & Bray, Ltd., Hermantown, MN, for Plaintiff.

Mary E. Bielefeld, U.S. Department of Justice, Washington, DC, for Defendant.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING SUMMARY JUDGMENT TO DEFENDANT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on the Plaintiff's motion

for summary judgment, and the requests for relief in the Defendant's response. Plaintiff Robert R. Kanuit appeared as counsel to the bankruptcy estate. The United States of America appeared by Mary E. Bielefeld, Trial Attorney, Tax Division, United States Department of Justice.[1] The following decision is based on the record made for the motion.

## THE PARTIES; NATURE OF THIS ADVERSARY PROCEEDING

Debtors Richard Elmer Lien and Patricia Marie Lien filed a voluntary petition under Chapter 7 on April 2, 2007. At all relevant times, the Debtors were the sole shareholders of a Minnesota corporation, Energy Smart Insulation, Inc. ("ESII"). Richard Lien was the president of ESII, and was one of four employees on its payroll. Patricia Lien was the company's secretary-treasurer, though she was not a paid employee.

The Plaintiff is the Trustee of the Debtors' bankruptcy estate.

The Defendant, through the Internal Revenue Service as its taxing authority, was a creditor of ESII in March, 2007. Its claim against ESII arose because ESII had failed to make payment on payroll taxes attributable to ESII's employees.

· In this adversary proceeding, the Plaintiff invokes the remedy of avoidance under 11 U.S.C. § 547 against the Defendant. He seeks to avoid a transfer of funds effected in late March, 2007, when a check in the amount of $24,964.00, drawn on the Debtors' personal checking account, was honored and the proceeds applied to the outstanding obligations of ESII to the Internal Revenue Service. To effectuate that avoidance, he seeks a money judgment pursuant to 11 U.S.C. § 550(a). Were he successful, the Plaintiff would administer the funds so recovered by making prioritized, pro rata payment to the Defendant and other claimants against the estate in the Debtors' bankruptcy case. The other claimants would include the Minnesota Department of Revenue—which, he says, holds a potential claim, arising from payroll-tax liability under state law traceable to ESII's operations.

The Defendant has vigorously defended this adversary proceeding. The Plaintiff made the motion at bar to bring the issues before the Court.

## REQUEST FOR RELIEF AT BAR

The Plaintiff moves for summary judgment. This is the procedure through which a party to an action may obtain a final adjudication on a claim or defense where the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c), *as incorporated by* FED. R. BANKR.P. 7056. In response, the Defendant argues first that the existence of triable fact issues precludes a grant of summary judgment. In the alternative, it vouchsafes that the Court could "determine undisputed facts on the record and order the entry of judgment in favor of the [Defendant]."

▮ This bipartient position is a bit too hedged and lawyerly. But, nonetheless, a grant of summary judgment to the Defendant could be made, despite the lack of a formal and forthright motion for that re-

---

**1.** In his original complaint, the Plaintiff named "United States Department of Treasury Internal Revenue Service" as the party-defendant. Under statute, the United States of America is the proper entity to be sued. In the answer she filed, defense counsel noted her appearance accordingly. All further references to "the Defendant" will signify the United States of America. Nothing has been done to formally substitute the proper party-defendant.

lief—as long as the evidence shows no dispute as to the elements of the Plaintiff's theory of recovery and the law dictates judgment for the Defendant on those undisputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Figg v. Russell,* 433 F.3d 593, 597 (8th Cir.2006); *Bendet v. Sandoz Pharm. Corp.,* 308 F.3d 907, 912 (8th Cir.2002); *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.,* 50 F.3d 592, 595 (8th Cir.1995); *Interco Inc. v. Nat'l Surety Corp.,* 900 F.2d 1264, 1268–1269 (8th Cir. 1990).

## UNDISPUTED FACTS

The evidence in the record[2] establishes a number of uncontested transactional and structural facts, as follows.

■ In January, 2005, the Debtors started the business of installing spray foam insulation in homes and buildings. They ran their operations from their home in Esko, Minnesota, and used ESII as a corporate business entity. ESII acquired vehicles and equipment from Energy Smart Insulation Systems, Inc., a corporation owned by Peter Beckwith (Patricia Lien's brother-in-law) and operated in the Twin Cities metropolitan area. Among those assets were a 2001 Chevrolet pickup truck and a 2002 Roadmaster cargo trailer outfitted with a generator, spray equipment, and hoses. In March, 2007, ESII was the owner of these two assets.[3]

Due to the early downturn in the residential construction industry in out-state Minnesota, business did not go well for ESII. The company ceased operations by November, 2006. By March, 2007, the Debtors were undergoing financial distress themselves; they had defaulted in payment on loans secured by first and second mortgages against their homestead, and had consulted an attorney regarding a bankruptcy filing.

During its active operation, ESII made payment only once to the federal and state taxing authorities for payroll tax obligations (Form 941 employment taxes, including withholding from employees' wages for their personal income tax obligations), plus the associated Form 944 employer's obligations for unemployment taxes. By March, 2007, the balance of ESII's payroll-related obligations to the Internal Revenue Service was at least $24,964.00, that figure consisting of withholding and

**2.** The evidence consists of the full transcript of depositions of both of the Debtors, with associated documentary exhibits, and the declaration of one Catherine J. Healy, a revenue officer of the Internal Revenue Service.

**3.** The certificates of title issued by the State of Minnesota Department of Motor Vehicles for both of these items recite "ENERGY SMART INSULATION SYST" as the record owner, at the Debtors' home address. The survival on the certificate of title of the fourth word, associated with the corporate name of the prior owner, can be attributed to sloppiness on the part of someone involved in the transfer of record title; the other record indicium of the owners' identity—the recited address of the owner—certainly denotes ESII. There is no dispute between the parties to this litigation that, as between Energy Smart Insulation Systems, Inc. and ESII, ESII had the ownership. For that matter, the Plaintiff does not dispute that ESII, and not the Debtors individually, had been the owner of the truck and the trailer during the period between its receipt of them from Energy Smart Insulation Systems, Inc. and its sale to North Star. In any event, on the record presented, this conclusion is compelled by Minnesota law. *Auto–Owners Ins. Co. v. Forstrom,* 684 N.W.2d 494, 497–498 (Minn.2004); *American Nat'l Gen. Ins. Co. v. Solum,* 641 N.W.2d 891, 899 (Minn.2002) (under single filing system of vehicle registration required by Minnesota's Motor Vehicle Act, presumption of ownership from status of record title is "for the most part conclusive," rebuttable only where seller-transferor failed to comply with registration requirements of Act).

unemployment tax obligations and some amount of interest and penalty. These obligations had accrued during the third and fourth quarters of 2005 and the first and second quarters of 2006, plus unemployment taxes for 2005. Of this, the sum of $13,125.12 was attributable to employee withholding.

On March 19, 2007, ESII sold the Chevrolet pickup and the Roadmaster trailer to North Star Insulating Systems, Inc. ("North Star"), for the sum of $25,000.00. Richard Lien handled the transaction on behalf of ESII. At his direction, North Star issued a check payable to him, personally, for the full amount. On the same day, Richard Lien deposited the check in the Debtors' personal checking account at Corner Stone State Bank. (ESII had maintained a business checking account at North Shore Bank of Commerce, but had granted that bank a right to use an automatic withdrawal from the account for payments on the debt secured by the second homestead mortgage.[4] The Debtors wanted to avoid North Shore Bank's application of sale proceeds to the past-due payments on that debt.) The total deposit credited to the account on that date was $25,030.00.[5]

The deposit of $25,030.00 rectified an existing negative balance in the account at Corner Stone State Bank. No further deposits were made to the account until April 11, 2007, when $20.00 was credited to the balance.[6]

On March 22, 2007, Patricia Lien issued check no. 2984 on the Corner Stone State Bank account, in the amount of $24,964.00 and payable to the United States Treasury. In the memorandum blank for the check, she wrote "20–2101440 form 941, 3rd qtr 2005–2nd qtr 2006." The first number was the taxpayer identification number that the Internal Revenue Service had previously issued to ESII.

Corner Stone State Bank honored the Debtors' check no. 2984 on March 29, 2007. This left a balance of $6.63 in the account.

The Internal Revenue Service's application of the payment to ESII's obligation left a balance owing of $1,345.00. The Internal Revenue Service attributed this unpaid amount to interest and nonpayment penalty on the employment tax obligation for the first quarter of 2006. All of ESII's other obligations were satisfied.

Because ESII's aggregate obligation to the Internal Revenue Service was almost paid in full via the March, 2007 payment, the Internal Revenue Service did not take any steps to assess a personal liability on the Debtors for a penalty under 26 U.S.C. § 6672.

## DISCUSSION [7]

11 U.S.C. § 547 empowers a trustee in bankruptcy to avoid a debtor's pre-petition transfer of property, where that transfer had the effect of preferring that creditor over others similarly-situated. For a transfer to a non-insider of the debtor, § 547(b) sets out the elements that a plain-

---

4.  The associated loan from North Shore Bank had funded the startup of ESII.

5.  The additional $30.00 in the total of the deposit came from another source. The record does not contain a copy of the check from North Star; but Deposition Exhibit 12, apparently a form of check memorandum from North Star with an associated check number, recited an amount of $25,000.00 even.

6.  The first finding in this paragraph is made by way of inference from the terse content of a bank-issued account statement for the period from March 20 to April 20, 2007. It shows a balance of $24,989.43 as of March 20, 2007, obviously resulting from the deposit of $25,030.00 on March 19.

7.  This section contains conclusions of law, set forth in memorandum form.

tiff-trustee must prove to obtain avoidance: (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor had asserted its claim in a Chapter 7 liquidation. *In re Interior Wood Prods. Co.*, 986 F.2d 228, 230 (8th Cir.1993); *Brown v. First Nat'l Bank of Little Rock,* 748 F.2d 490, 491 (8th Cir.1984).

■ To move for summary judgment, the Plaintiff assembled and presented the fruits of the parties' discovery process (including the full transcripts of fairly lengthy depositions of both of the Debtors), plus documents generated by his own investigation. He argued that this material was an evidentiary platform for findings that met all of the elements he had to prove, and that none of the extant evidence would support contrary findings.

■ Assuming that the specific points of evidence he cited for each element were relevant, otherwise admissible, and sufficiently probative, this was an appropriate invocation of the summary judgment procedure. *In re Nation–Wide Exchange Servs., Inc.*, 291 B.R. 131, 137–139 (Bankr. D.Minn.2003); *In re de Jesus*, 268 B.R. 185, 190–191 (Bankr.D.Minn.2001) (both collecting Supreme Court and Eighth Circuit decisions). And, if the Plaintiff's proffered evidence did make out a prima facie case, the burden shifted to the Defendant. To avoid a grant of judgment to the Plaintiff, the Defendant had to adduce admissible evidence that would support findings in its favor on one or more elements (hence precluding summary adjudication and requiring a trial), or (more in the abstract) to show how the law did not merit judgment

for the Plaintiff on the undisputed facts otherwise supported by the Plaintiff's evidence. *Id.*

The Defendant's response was a little odd. Its greater emphasis lay on the assertion of a sharp dispute as to facts material to several of the essential elements in question, and an insistence on going to trial. Were this correct, the Plaintiff's motion had to be denied; but the parties would have been relegated to the further burden and expense of a full-blown evidentiary presentation to get to the end of this. Only in the alternative did the Defendant suggest that the evidence of record did not support findings for the Plaintiff on every last one of the essential elements, and that the Defendant was entitled to summary judgment now, due to the Plaintiff's inability to make out a prima facie case. From the standpoint of economy alone, reversing the emphasis in argument would have made more sense; an early termination of litigation on a theory of law is always more cost-effective than vindication after trial, if it is strongly arguable that the facts are not in dispute.

Regardless of the defense's strategic election, it is appropriate to analyze this motion by first addressing the sufficiency, prima facie, of the Plaintiff's evidentiary proffer. When that is done, it is clear that the Plaintiff's case would fail for want of at least one essential element. Thus, the Defendant is entitled to a grant of summary judgment now.

■ The defense's alternate tack challenged several elements in the Plaintiff's proffer. The strongest point of this argument is the threshold element, in the statute's prefatory provision: a "transfer of an interest of the debtor in property," 11 U.S.C. § 547(b). Because it is dispositive, it is not necessary to address the Defen-

dant's arguments on the other elements of § 547(b).[8]

Early after the enactment of the Bankruptcy Code of 1978, the Eighth Circuit observed that "the property transferred must be property of the bankrupt's estate.... It must be shown that the transfer depleted the debtor's estate." *Brown v. First Nat'l Bank of Little Rock*, 748 F.2d at 491 (citations omitted). Correcting for the looseness of this legal characterization of property at the relevant point in time,[9] the thought here is that the statute operates as an equalizer, to redress acts of transfer that deprive a *later-created* bankruptcy estate of assets that otherwise would have entered it when the debtor ultimately filed for bankruptcy. Because the estate is initially funded by "all legal or equitable interests *of the debtor* as of the commencement of the case," 11 U.S.C. § 541(a)(1) (emphasis added), only pre-transfer "interest[s] *of the debtor* in property," § 547(b) (emphasis added), may be recaptured from preferred, pre-petition transferees via avoidance. *In re Bruening*, 113 F.3d 838, 841 (8th Cir.1997).

■ So, on the threshold of his case, the Plaintiff had to demonstrate that the proceeds of the sale of the Chevrolet pickup and the Roadmaster trailer were the property of Richard and Patricia Lien, singly or jointly, when those proceeds were transferred to the Defendant upon the honoring of the check drawn on the Debtors' personal checking account.[10]

The underlying facts going to this element are simple, and uncontroverted. The two tangible assets themselves were the property of the Debtors' business corporation, ESII, and not property of the Debtors individually. The state-issued certificates of title reflected that status of ownership; the truck and trailer were used by ESII's employees in the conduct of the corporation's business, and were purchased as suited for that usage; and there is no evidence at all that the Debtors in their individual capacity initially intended to take, or ever intended to assert or assume, the ownership of these two items themselves. The fact that Richard Lien resorted first to liquidating two items used by ESII throughout its operation to enable payment on a debt that was the corporation's own legal obligation is entirely consistent with this characterization of ownership.

This, of course, furnished a factual platform for characterizing the proceeds as

---

**8.** The Defendant further argued that the Plaintiff could not meet his initial burden on the elements of §§ 547(b)(1) (transfer to or for the benefit of a creditor of the Debtors), 547(b)(2) (transfer having been made on account of antecedent debt owed by Debtors personally), and 547(b)(5) (transfer having given creditor improvement in its position over treatment it would have received in bankruptcy absent transfer). Further, it cited 11 U.S.C. § 547(c)(2) to argue that the transfer was insulated from avoidance as one effected in "the ordinary course of winding down business affairs." The cogency of these points on their face varies greatly. (The ordinary-course defense, so phrased, borders on the frivolous.) However, it is not necessary to reach any of them.

**9.** The statute's subject is *pre-petition* transfers of the property of a person or entity that *later* goes into bankruptcy, 11 U.S.C. § 547(b)(4). The bankruptcy estate itself is not created until the commencement of a bankruptcy case via the filing of a petition with the court, 11 U.S.C. § 541(a). So, it is not as if a questioned transfer "depleted the estate" at the time of the transfer; the point is that an avoidable transfer results in a smaller estate, when the estate *later* comes into being.

**10.** For the purposes of § 547(b), the transfer of funds that are passed via the use of a check takes place when the drawee-bank honors the check. *Barnhill v. Johnson*, 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

ESII's property, through the expedient of a very simple tracing.

In his pleading and initial briefing, the Plaintiff relied solely on the fact that the payment to the Defendant was drawn off the Debtors' personal checking account, to characterize the transferred funds as the Debtors' personal property. However, the quick passage of the funds through an account nominally titled in the Debtors individually did not make the sale proceeds of a corporate asset into the Debtors' own property. There was no commingling of the proceeds in the account with other funds traceable to the Debtors' personal ownership. The account had a negative balance when Richard Lien deposited the check from North Star, plus an additional $30.00. There were no other transactions on the account before Corner Stone State Bank honored the Debtors' check to the Internal Revenue Service ten days after the deposit of the check from North Star. And, the resultant balance of less than $7.00 was apparently the net remaining from the overage amount, between the deposit of $25,030.00 and the payment of $24,964.00 to the Internal Revenue Service, after the rectifying of the pre-existing state of overdraft. It all traces through directly, without the confusion of a pre-existing positive balance, or other funds deposited or other checks honored in the meantime.

Thus, the funds were the property of ESII upon the consummation of ESII's sale to North Star. They remained ESII's property despite Richard Lien's directive to make the check payable to him personally, and his subsequent exploitation of the form of that check. And, as proceeds of ESII's assets, they were intentionally applied to ESII's debt. Finally, the only reason for the channeling of the funds through an account nominally titled in the Debtors, rather than through ESII's business account, was the Debtors' wish to avoid a setoff by North Shore Bank against the sale proceeds.

■ In oral argument, and then alone, the Plaintiff raised an elaborate alternate theory for the proceeds to have become the Debtors' individual property before their disbursement to the Internal Revenue Service: the issuance of North Star's check to Richard Lien, and the subsequent processing of the proceeds through the Debtors' personal account as a conduit, amounted to a distribution from ESII, a "Subchapter S corporation," of corporate earnings to them as its principals, which made the money their property.

Whatever the legal merits of such a theory (the Plaintiff did not give any citations to the Internal Revenue Code or other corporate or tax law that would support such a characterization in the abstract and after the fact), it fails for want of supporting evidence. Neither of the Debtors testified in deposition to a contemporaneous intention to effect such an abstract transaction.[11] There is no documentation, in corporate resolution or enabling instrument, to memorialize a distribution of corporate funds in the form of the sale proceeds, to the Debtors individually. Without evidence and a developed legal theory to override the effect of ESII's involvement as a distinct legal entity possessing and applying its own assets, its separate corporate identity must be recognized and given full effect. *In re Bruening*, 113 F.3d at 841–842.[12]

---

11. In fact, in deposition both Debtors testified that they had intended that the value corresponding to the two corporate assets be paid directly to the IRS.

12. After the paydown of the federal tax obligations, Richard Lien saw that ESII's record title to the other major corporate assets—a 2001 Ford F–250 truck and a New Holland

So, the evidence supports only one finding: The $25,000.00 generated by the sale of the Chevrolet pickup and the Roadmaster trailer, that funded the payment to the Internal Revenue Service in near-satisfaction of ESII's payroll tax liability, was the property of ESII throughout. It was not property of the Debtors, immediately before its receipt by the Internal Revenue Service.

Thus, the Plaintiff cannot prove an essential element of his cause of action for avoidance, the transfer of an interest of the Debtors in property. Though third-party payments reduce "the sum of the creditors' claims on the debtor," they are not avoidable because their making ultimately had "no effect on the estate of the debtor" when it later came into existence. The remedy of avoidance under § 547(b) does not apply to a third party's transfer of property toward the satisfaction of a debt. *In re Bruening*, 113 F.3d at 841. The Defendant is entitled to judgment in its favor. *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. 2548. *See also In re Nation–Wide Exchange Servs., Inc.*, 291 B.R. at 138–139 (collecting Eighth Circuit decisions).

### ORDER

On the memorandum of decision just made,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. The Plaintiff's motion for summary judgment is denied.

2. In receiving the sum of $24,964.00 on March 29, 2007, via the honoring of a check on the Debtors' personal checking account, the Defendant did not receive an interest of the Debtors in property.

3. Hence, the Plaintiff is not entitled under 11 U.S.C. § 547(b) to avoid the transfer effected upon the honoring of that check.

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERMS 2 AND 3.

skidloader—was transferred to the Debtors personally. This was a distinct transaction; and any manifestation of intent there is irrelevant to the matter at bar.