**AMERICAN NATIONAL GENERAL INSURANCE COMPANY,**
Respondent,

v.

**Paul Gerald SOLUM, et al.,**
Petitioners, Appellants,

**Adam Kraus, Petitioner, Appellant.**

No. C8–00–2082.

Supreme Court of Minnesota.

April 18, 2002.

Rippe, Hammell & Murphy, Joseph L. Hammell, Caledonia, for appellants Paul & Helen Solums.

Tomsche, Sonnesyn & Tomsche, Michael J. Tomsche, Minneapolis, for appellant Adam Kraus.

Stempel & Associates, PLC Michael W. Lowden, Hopkins, for respondent.

## OPINION

STRINGER, Justice.

On January 31, 1997 appellant Paul Solum was driving an uninsured pickup truck when a collision occurred with a vehicle driven by Adam Kraus. David Stoen, a passenger in the Kraus vehicle, was in-

jured and brought suit against Paul Solum and Kraus. American National General Insurance Company (American) insured other vehicles owned by Paul Solum and he sought general liability coverage from American. American's investigation determined that in 1995 title to the uninsured pickup had been transferred from Paul's adult son Daniel to Helen Solum, Daniel's mother and Paul's wife. The Solums acknowledged that the purpose of the transfer was to remove Daniel's name from the certificate of title so that it would not be seized or have its license plates impounded by the state as a result of Daniel's alcohol-related driving offenses.

American brought this declaratory judgment action claiming that because title to the pickup was vested in Helen Solum, liability coverage was not available under the owned vehicle policy exclusion.[1] Paul Solum claimed that despite Helen Solum appearing as titleholder, the pickup was actually owned by their son Daniel and therefore the owned vehicle exclusion did not apply. The trial court agreed with Paul but the court of appeals reversed concluding that compliance with the title transfer provisions of Minn.Stat. § 168.10 (2000) established "incontrovertible" evidence of ownership. We affirm the court of appeals.

The facts are largely undisputed and date back to 1994 when Daniel Solum purchased the pickup. Daniel paid for the pickup and obtained insurance on it. He paid for all maintenance and repairs, registration and license tabs, and since it was used as a farm work vehicle, he claimed the vehicle as a depreciable asset on his tax returns for the years 1994 to 1997. In April 1995, Daniel was arrested for driving while under the influence of alcohol. Since it was his fourth alcohol-related driving offense he was concerned that the Department of Public Safety might impound the pickup or confiscate its license plates, so Daniel transferred the pickup's title to his mother Helen Solum on April 12, 1995.[2] Daniel and his parents testified that the

---

1. The relevant provisions of Paul and Helen Solum's policy with American provided:

   DEFINITIONS USED THROUGHOUT THIS POLICY

   \* \* \* \*

   (2) "You" and "your" mean the Policyholder named in the Declarations [Paul and Helen Solum] and spouse if living in the same household.

   \* \* \* \*

   (8) "Relative" means a person living in your household and related to you by blood, marriage or adoption, including a ward or foster child.

   \* \* \* \*

   PART 1—LIABILITY
   COVERAGE A—BODILY INJURY AND
   COVERAGE B—PROPERTY DAMAGE
   *We will pay damages for which an insured person is legally liable because of bodily injury or property damage resulting from the* ownership, maintenance or *use of a car* or utility trailer.

   \* \* \* \*

   EXCLUSIONS
   We do not cover:

   \* \* \*

   (9) *Bodily injury or property damage resulting from the* ownership, maintenance or *use of a vehicle, other than your insured car, which is owned by* or furnished or available for regular use by *you or a relative.*
   (emphasis added).

2. Daniel testified that he filed the revised certificate of title for the pickup with the State of Minnesota, as is evident in the State of Minnesota's motor vehicle title records. Nonetheless, appellants argue that the transfer of the certificate of title was not properly executed, noting that the state had circled the space where the odometer reading should have been provided, but had not been, and wrote "N/R." In addition, appellants note that no price was indicated on the certificate of title; where the certificate states "Full Purchase Price" the phrase "Son to Mother" is written. Both Paul and Helen Solum testified

transfer of title was just a formality and that they still considered Daniel to be the owner[3] he retained full control over the pickup and was typically the only one who drove it. He maintained insurance on it until some time in 1996 when he allowed his policy to lapse because he could not afford coverage.[4]

In 1996, Daniel and his father Paul began operating a farming partnership on Paul's farm. Daniel usually drove the pickup to work, utilizing the field roads to travel the 2 mile distance between his house and that of his parents. On January 31, 1997 the pickup was parked in front of his parents' house with the keys in it while Daniel was working. Because feed supplies were running low and Paul's truck was being repaired, Paul drove the pickup into town without asking Daniel and unaware that Daniel's insurance policy had lapsed. It was on that trip that the accident occurred between Paul and Kraus.

At the time of the accident, Paul and Helen Solum had three vehicles insured with American. The pickup was not one of them. Paul reported the accident to his insurance agent and directly to the company, and American initially provided coverage under a reservation of rights. After David Stoen, a passenger in Kraus's vehicle at the time of the accident, filed a personal injury suit naming Paul Solum and Kraus as defendants, American learned of the title transfer from Daniel to Helen Solum. American then determined

that the pickup was not an insured vehicle under the owned vehicle exclusion in the Solums' policy and that it was not obligated to provide coverage for the January 1997 accident. American filed this action for declaratory relief.

The Solums contend that they are entitled to liability coverage under the policy because the pickup truck was owned by Daniel and therefore the owned vehicle exclusion in paragraph 9 does not apply. American asserts that the Solums are not entitled to coverage because Helen Solum owned the pickup and, accordingly, the exclusion applies.

The trial court denied various dispositive motions and the issue of ownership of the pickup was submitted to a jury on instructions that in deciding who owned the vehicle, a number of factors could be considered including: the name on the certificate of title, whether the vehicle was delivered, the circumstances of the purchase, who paid how much of the purchase price, the name on the purchase invoice, who paid the insurance, the name of the person insured under the policy, who provided the upkeep and repairs and who controlled, operated or used the vehicle.[5] The jury concluded that Daniel was the owner of the pickup and an order consistent with the jury's determination was issued on September 15, 2000 declaring that American must provide coverage for Paul Solum for damages arising out of the January 31, 1997 accident.

that no money was ever paid to Daniel for the pickup.

**3.** Nonetheless, both Daniel and Helen testified that if the Department of Public Safety threatened to impound the pickup or confiscate its plates on account of Daniel's driving record, they would have claimed it was owned by Helen Solum.

**4.** Daniel testified that since the accident the vehicle has been insured and he has continued to exercise complete dominion and control over the vehicle.

**5.** *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice Jury Instruction Guides, Civil,* CIVJIG 32.10 (4th ed.1999).

On review by the court of appeals, the court reversed concluding that because the Solums "substantially complied" with section 168A.10 when transferring title from Daniel to Helen, she was the "incontrovertible" owner of the pickup and the trial court erred in allowing extrinsic evidence to show other claimed ownership of the pickup. *American Nat'l Gen. Ins. Co. v. Solum*, 631 N.W.2d 420, 423–24 (Minn. App.2001).[6] The court rejected the Solums' argument that they did not comply with the statutory requirements relating to transfer of title, noting that despite their claimed errors in the transfer of title process, transfer of title did in fact occur. The court further concluded that because the Solums intended that Daniel continue driving the pickup there was no requirement of actual delivery.[7]

■ On appeal to this court the primary point of contention between the parties is whether extrinsic evidence may be introduced to rebut the presumption of ownership of the pickup created by the certificate of title listing Helen Solum as the owner. The material facts are not in dispute, and resolution of this issue involves an interpretation of statutory and case law. Our standard of review is de novo. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989) (noting that a reviewing court need not defer to the district court's application of the law when the

material facts are not in dispute); *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (stating that a reviewing court is not bound by a district court's decision on a purely legal issue).

The transfer of motor vehicle titles in Minnesota is governed by Minn.Stat. § 168A.10, enacted in 1971 as part of the Motor Vehicle Certificate of Title Act ("Motor Vehicle Act"). At the time the title was transferred from Daniel to Helen Solum, the statute provided that "[i]f an owner transfers interest in a vehicle * * * the owner shall * * * execute an assignment and warranty of title to the transferee and shall state the actual selling price * * * [and] the true cumulative mileage" in the space provided on the certificate and "cause the certificate and assignment to be delivered to the transferee immediately." Minn.Stat. § 168A.10, subd. 1 (1994).[8] Within ten days thereafter, the transferee is to "execute the application for a new certificate of title in the space provided therefor on the certificate" and mail or deliver it to the registrar of motor vehicles. *Id.*, subd. 2. The statute further provides:

Except as provided in section 168A.11 and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with; however, an owner who has

---

6.  The court of appeals mistakenly referred to the coverage at issue here as uninsured motorist insurance. *Id.* at 421. The error was harmless because as the cases have developed around the issue of extrinsic evidence, both third party liability and first party uninsured motorist liability have been at stake. Further, the question whether extrinsic evidence is admissible to challenge registered title is largely a matter of statutory interpretation and has not been dependent upon the type of insurance involved.

7.  Because the court of appeals concluded that the Solums complied with § 168A.10, it found no need to reach American's alternative argument that the vehicle transfer was an illegal act. 631 N.W.2d. at 424 n. 1.

8.  Although the statute has been revised since the time of the title transfer at issue here, the change in language is not material to our analysis and holding in this case.

delivered possession of the vehicle to the transferee and has complied, or within 48 hours after such delivery does comply, with the provisions of this section requiring action by the owner is not liable as owner for any damages resulting from operation of the vehicle after the delivery of the vehicle to the transferee.

*Id.*, subd. 5. The term "owner" is defined in section 168A.01, subd. 13 (2000) as "a person, other than a secured party, having the property in or title to a vehicle." [9]

Appellants' effort to use extrinsic evidence to establish title in Daniel rather than Helen Solum implicates Minnesota's Motor Vehicle Act as it has been interpreted in our case law. As we noted in *Welle v. Prozinski:*

> Prior to the enactment of § 168A.10, the fact that an individual's name appeared on the certificate of title as the owner of the vehicle was prima facie evidence of his ownership of the automobile. This presumption of ownership was rebuttable rather than conclusive on the issue of ownership. Thus, the parties were permitted to introduce evidence of the

facts surrounding a particular transaction to demonstrate that the title to the vehicle was, in fact, possessed by another party.

258 N.W.2d 912, 916 (Minn.1977). This early system was similarly described in *Bank North,* but we added:

> Following enactment of [the Motor Vehicle Act] in 1971, the ability to rebut ownership of the vehicle was greatly circumscribed. Thereafter, compliance by the owner with the transfer provisions of Minn.Stat. § 168A.10, subds. 1 and 2 (1986) establishes an absolute defense to any claim attempting to impose vicarious liability on him under [the Safety Responsibility Act] Minn.Stat. § 170.54 (1986). However, even after enactment of chapter 168A, noncompliance by a transferor with the statute provisions does not preclude the transferor from presenting extrinsic evidence relative to the true facts of the transaction to avoid the imposition to him of vicarious tort liability.

*Bank North v. Soule,* 420 N.W.2d 598, 601 (Minn.1988).[10]

Thus, as we noted, permitting extrinsic evidence to rebut ownership was "circum-

---

9.  Also relevant are the following subdivisions of Minn.Stat. § 168A.05 (1994) regarding the certificate of title:

> Subdivision 1. The department shall file each application received, and when satisfied as to its genuineness and regularity and that the applicant is entitled to the issuance of a certificate of title shall issue a certificate of title of the vehicle.
>
> \* \* \* \*
>
> Subd. 3. Each certificate of title issued by the department shall contain:
> (1) the date issued;
> (2) the first, middle, and last names, the dates of birth, and addresses of all owners who are natural persons, the full names and addresses of all other owners;
> \* \* \* \*

> Subd. 6. A certificate of title issued by the department is prima facie evidence of the facts appearing on it.

These subdivisions have been revised in the years following the Solums' transfer, however, the specific language cited above remains the same.

10.  We went on to extol the advantages of the Motor Vehicle Act:

> The 1971 statutory enactment [supplanted] the former system of motor vehicle registration in this state by establishing a system of vehicle registration employing a certificate of title concept. \* \* \* As a result, parties to a commercial transaction, whether it be sale or a security arrangement, were able to rely with practical certitude on what was inscribed on the certificate of title with respect to ownership and outstanding security

scribed" to situations where a transferor who had not complied with the transfer provisions of the Motor Vehicle Act was attempting to avoid vicarious liability based upon the "true facts." The origins for this rule were in *Welle v. Prozinski*, where an injured automobile passenger sought to impose vicarious liability on the owner identified on the title certificate; the driver had purchased the vehicle from the owner named on the certificate prior to the accident but title had not yet been transferred. 258 N.W.2d at 914. Upon being instructed that the certificate of title was prima facie evidence of ownership of the vehicle that could be rebutted by extrinsic evidence relating to the transfer, the jury concluded that the driver of the automobile, rather than the owner named on the certificate, was indeed the true "owner." The trial court subsequently granted plaintiff's JNOV motion holding that the seller's failure to comply with the provisions of section 168A.10 by not transferring title to the buyer created an irrebuttable presumption of ownership in the seller for purposes of vicarious liability. *Id.* at 914–16. We reversed, ruling that although "*compliance* with the provisions of § 168A.10 establishes incontrovertible evidence that ownership of the motor vehicle passed from the seller-transferor to the buyer-transferee and thereby eliminates any possible liability as 'owner' of the automobile" for purposes of vicarious liability, "a seller-transferor who *fails to comply* with the transfer provisions * * * is not precluded from pre-

senting extrinsic evidence * * * concerning the actual facts of the transaction in order to avoid vicarious liability." *Welle,* 258 N.W.2d at 916 (emphasis added). Thus, in the context of vicarious liability, *Welle* introduced a compliance-noncompliance distinction with respect to the introduction of extrinsic evidence of ownership that has been consistently followed in our appellate review.

For example, in *Arneson v. Integrity Mut. Ins. Co.,* 344 N.W.2d 617, 619 (Minn. 1984), we reaffirmed our holding in *Welle* that "[a]lthough compliance with the title transfer requirements establishes a conclusive presumption that a sale has taken place, noncompliance with the transfer provisions of § 168A.10 does not preclude the titleholder from presenting extrinsic evidence to establish that, although the title registration was unchanged, a sale had in fact occurred." We added that this rule was "equally applicable for purposes of avoiding the compulsory insurance provisions of § 65B.48 [of the Minnesota No Fault Act]." *Arneson,* 344 N.W.2d at 619.

More recently, in *Vue v. State Farm Ins. Companies,* 582 N.W.2d 264 (Minn. 1998), we considered the *Welle* rebuttable presumption rule in the context of a claim for uninsured motorist benefits. *Vue* involved a suit brought by an insured and his injured spouse seeking uninsured motorist benefits for her injuries based on the uninsured status of the vehicle with which they collided.[11] 582 N.W.2d at 265. We held there is no presumption that the

interests much in the same way a vendee or mortgagee of real property has been able to rely upon a certificate of title issued under the Torrens system for the registration of title to real estate. The statutory scheme clearly contemplated that the true owner possess the certificate of title which on its face identifies him as the owner.

*Bank North,* 420 N.W.2d at 602 (internal citations omitted).

11. The insurer claimed the spouse was barred from recovering uninsured motorist benefits based on an exclusion in the policy, an argument which required the insurer to challenge the presumption that the person named on the automobile title as buyer is the vehicle's

spouse of the person named as owner on the automobile title as owner or buyer of the vehicle is a co-owner of the vehicle,[12] and we reiterated our ruling in *Arneson* that the certificate of title creates a rebuttable presumption of ownership for purposes of vicarious liability under the Motor Vehicle Act and liability under the No Fault Act. *Vue*, 582 N.W.2d at 264–66, 268. Thus we have stated, whether directly or by implication, that the rebuttable presumption of ownership applies with respect to the named owner on a motor vehicle title where there is noncompliance with the transfer provisions of the Motor Vehicle Act to prove the identity of the *true* owner of the vehicle for tort and tort-like claims—but the rebuttable presumption has not been applied beyond these "circumscribed" limits.

In *Bank North*, for example, a lender who accepted a motor vehicle certificate of title naming the borrower as the vehicle's owner brought a replevin action against the borrower and one who had purchased the vehicle prior to the time of the pledge but who neither acquired the certificate of title nor had his interest memorialized on the certificate. 420 N.W.2d at 599. We held that the rebuttable presumption of ownership should not be extended to permit a purchaser to defeat the claim of a holder of a security interest who relied upon the motor vehicle certificate of title.[13] 420 N.W.2d at 599, 603.

Appellants Paul and Helen Solum and Adam Kraus assert however, that it is proper to allow the introduction of extrinsic evidence to rebut the presumption of ownership of the pickup created by the certificate of title listing Helen Solum

---

owner and to urge the adoption of a presumption that the spouse of the individual named on the vehicle title is also an owner. *Id.* at 264–66.

**12.** In *Vue* we stated:

> Both the statute and the contract provide a mechanism by which State Farm can rebut the statutory presumption that [the sole owner] listed on the title, is the sole owner of the [vehicle]. We cannot attribute to [the spouse] ownership of the [vehicle] when State Farm has not even inquired into the factual basis for its claim that she is an owner of the [vehicle]. On remand, State Farm may yet delve into the factual questions behind the naked title to establish "use or possession" of the [vehicle] by [the spouse] to prove that she is an owner of the [vehicle].

*Id.* at 267–68. Appellant Kraus argues this language "clearly establishes" that extrinsic evidence is admissible to prove that someone other than the individual named on the title owned the vehicle, even in the absence of a failed attempt to transfer title. We do not agree that *Vue* can be read so broadly. In *Vue*,

the insurer claimed that the injured spouse was an owner—in effect that the title certificate registered by the insured did not accurately reflect ownership. It is quite another thing for the Solums, however, to dispute the accuracy of the title *they* registered.

**13.** In so holding, we observed:

> In all our cases in which a rebuttable presumption has been applied or considered, both before and after 1971 [when the Motor Vehicle Act was enacted], * * * * the inquiry has been focused upon the ascertainment of automobile ownership *for the ultimate purpose of establishing the proper party against whom a tort claimant should address his or her tort-like claim for recovery of personal injury damages*. In [none of the previous contexts] has the claimant relied upon the certificate of title to change his or her position vis-a-vis the automobile or its owner. In contrast, in a commercial setting, a transferee of the vehicle, or, as in this case, one lending money, repayment of which is secured by the vehicle, does rely upon the certificate of title at the time to purchase or to loan money on security of the vehicle.

*Id.* at 601–02 (emphasis added).

as the owner.[14] Citing *Welle, Arneson,* and *Vue,* the Solums argue that the rebuttable presumption rule should be applied because the situation more closely resembles the facts in those cases than the facts in *Bank North* where this court declined to apply the rule. They characterize the transaction as an "attempted" transfer, a mere formality intended to avoid a potential forfeiture but not to change the position of the parties to the transfer. Because American is not a secured party and there was no detrimental reliance, they argue the rationale of *Bank North* does not apply.

In support of their argument they cite several deficiencies in the transfer of title documents between Daniel and Helen Solum. They note that neither the sale price nor the odometer reading was provided on the certificate as required by section 168A.10, subd. 1, and that Daniel Solum failed to "cause the certificate and assignment to be delivered to the transferee immediately," also required by subdivision 1. Appellants further contend that delivery is a "vital element" of section 168A.10 [15] and that Daniel's failure to deliver the vehicle to Helen was another instance of noncompliance.

As we observed above, the Motor Vehicle Act was intended to provide a single filing system of vehicle registration on which all parties could rely for determining who was the owner of a motor vehicle, similar to the Torrens system for the registration of title to real estate. *Bank North,* 420 N.W.2d at 602. Thus, the presumption of ownership established by the certificate of title, that 30 years ago was generally rebuttable, became for the most part conclusive. The ability to rebut ownership of the vehicle was "greatly circumscribed," available only to prove the identity of the *true* owner in cases where the seller-transferor failed to comply with the transfer requirements of the Act and sought to avoid liability under the Safety Responsibility Act or determine rights and responsibilities relating to uninsured motorist coverage. *Bank North,* 420 N.W.2d at 601; *see generally Vue,* 582 N.W.2d at 264; *Arneson,* 344 N.W.2d at 619; *Welle,* 258 N.W.2d at 916. In these limited instances we have held that the party challenging title was not precluded from presenting extrinsic evidence to establish that ownership was in fact vested in another.

The facts here are readily distinguishable from those in cases where we have permitted extrinsic evidence to challenge title. Here the Solums are attempting to dispute the validity of the title *they per-*

---

14. On this point, appellants assert that the name on the certificate of title should be merely one factor in determining ownership of the pickup, referencing the nine-factor test utilized by the trial court in its instructions to the jury and pointing out that the name on the title is the only factor that weighs against Daniel Solum as owner. *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice Jury Instruction Guides, Civil,* CIVJIG 32.10 (4th ed.1999); *see also* text accompanying note 5 above.

15. Appellants cite to provisions in the statute that indicate that "the owner shall *at the time of the delivery* of the vehicle execute an assignment and warranty of title" and *"an own-*

*er who has delivered possession of the vehicle* to the transferee * * * is not liable as owner for any damages resulting from operation of the vehicle *after the delivery of the vehicle to the transferee."* Minn.Stat. § 168A.10, subds. 1, 5. (emphasis added). Appellants Paul and Helen Solum also find support in Minnesota's version of the Uniform Commercial Code which states: "[T]itle passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods," arguing that the physical delivery requirement of this statute applies to section 168A.10. Minn.Stat. § 336.2–401(2) (2000).

*fected* in Helen Solum. As the process of transfer here was complete, this is not a case where title is in the name of someone not the *true* owner. The Solums intended title to be vested in Helen Solum, the appropriate forms were sufficiently filled out to complete the transfer and a certificate of title was issued in her name. It is clear from our language in *Welle* and *Arneson* that compliance with the transfer provisions of section 168A.10 by Daniel, the transferor, established a conclusive presumption of ownership in Helen Solum, the individual named on the vehicle's certificate of title.

Finally, although we do not rest our decision on this point, there are independent public policy grounds for denying the Solums relief. The questionable purpose of this transfer—to shield the pickup from authorities who may seek to confiscate it—would suggest that the parties be left where they placed themselves. *See Kath v. Kath,* 238 Minn. 120, 126, 55 N.W.2d 691, 695 (1952) (acknowledging rule that courts will refuse to exert their powers to extricate a party from the consequences of their own dishonesty); *see also Moffett v. Parker,* 71 Minn. 139, 144, 73 N.W. 850, 852 (1898). As we stated many years ago in *Johnson v. Freberg:*

> The misconduct need not be of such a nature as to be actually fraudulent or constitute a basis for legal action. The plaintiff may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others.

178 Minn. 594, 597–98, 228 N.W. 159, 160 (1929).

Affirmed.