In re the CUSTODY OF D.T.R.

Michael L. Richards, Petitioner Below,

v.

Derek Reiter, Respondent,

Lynette A. Marthe, Appellant.

No. A10–1098.

Supreme Court of Minnesota.

May 4, 2011.

Anne Heimkes Tuttle, Laura Schultz, Tuttle Bergeson, P.A., Shakopee, Minnesota, for respondent.

David F. Herr, Haley N. Schaffer, Sarah B. Riskin, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota, for appellant.

## OPINION

DIETZEN, Justice.

The petitioner below, Michael Richards, brought a petition seeking joint legal custody of and parenting time with D.T.R., and named the mother, appellant Lynette Marthe and her then-husband, respondent Derek Reiter, as parties to the proceeding. The district court adjudicated Reiter as the legal father of D.T.R. and dismissed Richards' petition. Marthe appealed, but Richards did not. The court of appeals dismissed the appeal on the ground that

Marthe lacks standing to appeal. Because we conclude that Marthe is an aggrieved party and has standing to appeal a paternity determination, we reverse the decision of the court of appeals and remand to the court of appeals for further proceedings.

The minor child, D.T.R., was born in May 2004, during the marriage of Marthe and Reiter. At the time, both Marthe and Reiter believed that Reiter was D.T.R.'s biological father. Reiter was listed as the father on D.T.R.'s birth certificate, and has been the father to D.T.R. since his birth. In July of 2008, however, genetic testing established that Richards was D.T.R.'s biological father.

In August 2008 Richards filed a petition for joint legal custody of D.T.R. pursuant to Minn.Stat. § 518.156 (2010), alleging that he was the father of D.T.R., and that he and Marthe signed a Recognition of Parentage for D.T.R. in July 2008, in accordance with Minn.Stat. § 257.75 (2010). The petition named the mother, Marthe, and her then-husband, Reiter, as parties. Richards requested that the court: (1) determine Reiter's non-paternity of D.T.R., (2) grant permanent joint legal custody to Richards and Marthe and sole physical custody to Marthe, and (3) determine that Richards be required to pay guideline child support to Marthe. Reiter responded to the petition, alleging that he and Marthe signed a Recognition of Parentage for D.T.R. at the time of D.T.R.'s birth and requesting that he be adjudicated the legal father and awarded joint legal and physical custody of D.T.R.

Before trial, the parties stipulated that Richards was the biological father of D.T.R., but could not agree who should be adjudicated the legal father of D.T.R. pursuant to Minn.Stat. § 257.52 (2010). The case proceeded to trial in December 2009. At trial, Richards, Marthe, and Reiter testified. The district court took judicial no-

tice that at the time of the trial, a dissolution action was also pending in Wright County between Marthe and Reiter. The parties stipulated that this case involved competing paternity presumptions under the Minnesota Parentage Act, Minn.Stat. §§ 257.51–.74 (2010), and that the court needed to weigh the competing presumptions and adjudicate paternity.

The Parentage Act provides a statutory framework for determining parentage. Generally, the Parentage Act defines the parent-child relationship, describes certain presumptions of paternity, and sets forth the procedure for bringing an action in district court to determine the father-child relationship, as well as the mother-child relationship. *See* Minn.Stat. §§ 257.52, .55, .57, .60. Under the Parentage Act, the biological mother or a man presumed or alleged to be the father may bring an action, subject to certain time limits, to determine the existence of the father-child or mother-child relationship. Minn.Stat. § 257.57, subds. 1–2. Moreover, the mother and each man presumed or alleged to be the father are necessary parties in any action to determine the existence of the father-child or mother-child relationship. Minn.Stat. § 257.60.

The presumptions in the Parentage Act applicable to the facts of this case are that (1) a man who is married to a child's mother when the child is born, or who was married to a child's mother within 280 days before the child's birth, is presumed to be the child's biological father pursuant to section 257.55, subdivision 1(a); and (2) under section 257.62, subdivision 5(b), positive blood or genetic results create an "evidentiary presumption" of paternity that may only be overcome by clear and convincing evidence. When faced with competing presumptions, the court must evaluate the presumptions and "the presumption which on the facts is founded on

the weightier considerations of policy and logic controls." Minn.Stat. § 257.55, subd. 2.

In April 2010 the district court filed detailed and thorough findings of fact, conclusions of law, and an order concluding that a parent-child relationship exists between Reiter and D.T.R., and adjudicated Reiter as D.T.R.'s father. The court concluded that Reiter's presumption of paternity was "founded on the 'weightier considerations of policy and logic' " under section 257.55, subdivision 2, and that Richards had not rebutted that presumption based on clear and convincing evidence. The court found that Reiter had been involved in D.T.R.'s life since D.T.R. was born and D.T.R. knew Reiter as his father. The court's order did not address custody, parenting time, or financial issues.

Marthe appealed the district court's determination of paternity, but Richards did not. The court of appeals questioned Marthe's standing to appeal the dismissal of Richards' petition. After additional briefing on the issue, the court of appeals dismissed Marthe's appeal on the ground that she lacks standing to appeal. *In re the Custody of D.T.R.*, No. A10–1098, Order at *3 (Minn.App. filed Aug. 3, 2010). The court relied on *State v. Sax,* 231 Minn. 1, 42 N.W.2d 680 (1950), to support its decision. *D.T.R.*, Order at *2. Subsequently, we granted review. The only issue before us is whether Marthe has standing to appeal the district court's adjudication of paternity.

## I.

■ To answer the question presented, we first examine the doctrine of standing and then apply that doctrine to the facts of this case. Standing is a jurisdictional doctrine, and the lack of standing bars consideration of the claim by the court. *See Enright v. Lehmann,* 735

N.W.2d 326, 329 (Minn.2007) (citing *Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 27 (Minn.1989)). Because standing is a jurisdictional issue, we evaluate decisions on standing de novo. *See Swenson v. Nickaboine,* 793 N.W.2d 738, 743 (Minn.2011) (reviewing jurisdiction de novo). The interpretation of a statute or case law is also reviewed de novo. *Zurich Am. Ins. Co. v. Bjelland,* 710 N.W.2d 64, 68 (Minn.2006) (citing *Am. Nat'l Gen. Ins. Co. v. Solum,* 641 N.W.2d 891, 895 (Minn. 2002)).

In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the U.S. Supreme Court stated that the "constitutional minimum of standing contains three elements." *Id.* at 560, 112 S.Ct. 2130.

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61, 112 S.Ct. 2130 (internal citations omitted).

■ Minnesota case law also requires that a party have standing before a court can exercise jurisdiction. *See Annandale Advocate,* 435 N.W.2d at 27. Generally, we examine standing at various stages of the litigation proceeding, including when a plaintiff brings a cause of action and when a party appeals a decision. Standing to bring an action can be conferred in two ways: "either the plaintiff has suffered some 'injury-in-fact' or the plaintiff is the beneficiary of some legislative enactment granting standing." *Enright,* 735 N.W.2d at 329. To demonstrate an injury-in-fact,

the plaintiff must show "a concrete and particularized invasion of a legally protected interest." *Id.* (citing *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130).

█ █   Standing to appeal may be conferred by a statute or by the appellant's status as an aggrieved party. *City of St. Paul v. LaClair,* 479 N.W.2d 369, 371 (Minn.1992). The appellant's status as an aggrieved party depends on whether "there is injury to a legally protected right." *Id.* (citing *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 140–41, 71 S.Ct. 624, 95 L.Ed. 817 (1951)).

Prior to 1963, Minn.Stat. § 605.09 specifically required that a party be "aggrieved" in order to appeal a decision. Minn.Stat. § 605.09 (1961). In 1963, the Legislature removed the "aggrieved" language, but maintained the focus on the types of judgments that provide a basis for an appeal. Act of May 22, 1963, ch. 806, § 8, 1963 Minn. Laws 1414, 1416. Section 605.09 was repealed in 1974 when the Legislature eliminated certain statutory provisions that conflicted with portions of the Rules of Civil Appellate Procedure. Act of April 9, 1974, ch. 394, § 11, 1974 Minn. Laws 702, 707.

Currently, Minn. R. Civ.App. P. 103.03 sets forth appealable judgments and orders that were formerly discussed in section 605.09. While the "aggrieved party" language does not appear in Rule 103.03, we have previously stated that the "deletion [of 'aggrieved party' from section 609.05] effected a change in form only." *Twin Cities Metro. Pub. Transit Area v. Holter,* 311 Minn. 423, 425 n. 3, 249 N.W.2d 458, 460 n. 3 (1977). "That a party must be aggrieved in order to appeal remains fundamental to the modern version of section 609.05," which is now expressed in Minn. R. Civ.App. P. 103.03. *Holter,* 311 Minn. at 425 n. 3, 249 N.W.2d at 460 n. 3.

█   Whether a party is aggrieved depends on whether that party's "personal right [was] injuriously affected by the adjudication." *Singer v. Allied Factors, Inc.,* 216 Minn. 443, 446, 13 N.W.2d 378, 380 (1944). A party with "no interest in the subject of the litigation cannot be aggrieved by the adjudication and consequently has no right to appeal." *Id.* at 446, 13 N.W.2d at 380 (citing *Kellogg v. Chicago R.I. & P.R. Co.,* 126 Minn. 31, 32–33, 147 N.W. 667, 667–68 (1914)). The injury to the right impacted by the adjudication must be immediate, and not a "possible, remote consequence, or mere possibility arising from some unknown or future contingency." *In re Trust in Estate of Everett,* 263 Minn. 398, 401, 116 N.W.2d 601, 603 (1962) (citation omitted). Thus, a party is "aggrieved" when that person had a direct interest in the litigation and that person's rights were injuriously affected by the adjudication.

## II.

█   Marthe argues that she has standing to appeal as an aggrieved party pursuant to applicable case law and the Minnesota Parentage Act, Minn.Stat. §§ 257.51–.74. Reiter asserts that Marthe does not have standing because her rights are not affected by a judgment that determined the paternity of D.T.R. According to Reiter, Marthe's rights are affected only when her individual interests are at stake, such as a decision determining custody, parenting time, or child support.

We first examine Marthe's standing as an aggrieved party under our existing case law. We have addressed a mother's standing to appeal from an adjudication of paternity in at least two cases. *State v. Sax,* 231 Minn. 1, 42 N.W.2d 680 (1950); *State v. E.A.H.,* 246 Minn. 299, 75 N.W.2d 195 (1956). In *Sax,* the biological mother com-

menced a paternity action against a putative father, Sax. 231 Minn. at 3, 42 N.W.2d at 682. The jury found Sax guilty of paternity, and Sax then petitioned the district court to approve a lump sum settlement award for child support. *Id.* at 3–4, 42 N.W.2d at 682. The district court entered an order approving the lump sum award, and the mother appealed. *Id.* at 4, 42 N.W.2d at 682. On appeal, a dispute arose regarding the mother's standing to appeal.[1] *Id.* at 4, 42 N.W.2d at 682. The court held that the mother was an aggrieved party and therefore was entitled to appeal under Minn.Stat. § 605.09 (1961). 231 Minn. at 4, 42 N.W.2d at 682. We reasoned that the mother has a "definite personal financial interest in the amount of the award for support" and the mother's "secondary responsibility for support gives her a direct interest in the amount of the award against the father." *Id.* at 4, 42 N.W.2d at 682.

Subsequently, in *E.A.H.* we considered whether the complainant mother had standing to appeal a determination that the putative father was not guilty of paternity. 246 Minn. at 304–05, 75 N.W.2d at 199–200. In that case, the State brought a paternity action against the putative father, E.A.H., on the complaint of the biological mother. *Id.* at 300, 75 N.W.2d at 197. The district court found in favor of E.A.H. and denied the State's motion for a new trial on the basis of newly discovered evidence. *Id.* at 303, 75 N.W.2d at 198. Judgment was entered in favor of E.A.H., and the mother appealed. *Id.* at 303, 75 N.W.2d at 198–99. On appeal, E.A.H. argued that the mother did not have standing to appeal paternity as an aggrieved party. *Id.* at 303, 75 N.W.2d at 198–99. E.A.H. asserted that the mother had a personal financial interest in child support,

but not in paternity. *Id.* at 304, 75 N.W.2d at 199. E.A.H. argued that *Sax* was factually distinguishable on the ground that the guilt of the putative father had been established and the only issue was the amount of the child support award. *Id.* at 304, 75 N.W.2d at 199.

We concluded, among other things, that the biological mother had standing to appeal and denied E.A.H.'s motion to dismiss the mother's appeal. *Id.* at 305, 75 N.W.2d at 200. Our determination rested on the conclusion that a biological mother's "secondary responsibility for support of the child gives her a direct interest in the amount of the award," and that responsibility also "gives her a direct interest in determining the primary question as to who is father of the child. The determination of [paternity] is a prerequisite to the order for support." *Id.* at 304–05, 75 N.W.2d at 199.

Reiter argues that *E.A.H.* is factually distinguishable from this case. Specifically, he contends that the court in *E.A.H.* did not adjudicate paternity; hence, the issue of child support was not resolved, and therefore the mother's personal financial interest was adversely affected. Unlike the result in *E.A.H.*, Reiter argues that because he was adjudicated the legal father and obligated to pay child support, Marthe's right to receive child support will not be adversely affected. Reiter, however, misconstrues our decision in *E.A.H.* Specifically, we concluded the mother had a "sufficient, direct pecuniary interest" in the outcome of paternity proceedings, and that interest gives her standing to appeal as an aggrieved party. 246 Minn. at 305, 75 N.W.2d at 200. We reasoned that because a mother has a direct financial interest in the amount of child support, it logically follows that the mother has the same

---

**1.** The dissent concluded that the mother did not have standing to appeal because she was

not a party. *Sax,* 231 Minn. at 20–22, 42 N.W.2d at 691–92 (Knutson, J., dissenting).

interest in determining the primary question of who is the father. *Id.* at 304–05, 75 N.W.2d at 199.

Applying the reasoning in *E.A.H.*, we conclude that Marthe has a direct financial interest in the determination of paternity. The child support obligations of both parents depend on a comparison of their respective individual incomes. Pursuant to Minn.Stat. § 518A.34 (2010), child support is a function of the parents' combined incomes. Each parent's share of the combined support obligation is based on each parent's relative contribution to the combined parental income.[2] *Id.* Thus, child support is based on the combined income of the parents, and the identity of either parent has a direct impact on the amount of child support the other parent must pay. *See id.* Consequently, Marthe has standing to appeal a determination of paternity of her child as an aggrieved party.

Moreover, both parents have a right to make decisions related to care, custody, and control of their child. *See SooHoo v. Johnson*, 731 N.W.2d 815, 820 (Minn.2007) ("A parent's right to make decisions concerning the care, custody, and control of his or her children is a protected fundamental right." (citing *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000))). The determination of the identity of the father directly impacts the mother's responsibility for care, custody, and control of the child.[3] Consequently, a mother's rights related to care, custody, and control of her child also give her a direct interest in the determination of the paternity of her child.[4]

 In summary, we conclude that Marthe has standing to appeal as an aggrieved party the district court's determination of the paternity of D.T.R. on the grounds that the determination of paternity directly impacts her responsibility for child support and her rights related to child support, and directly impacts her rights related to care, custody, and control of her child.

Reversed and remanded.

---

2. In *Sax* and *E.A.H.*, we described a mother's responsibility for child support as "secondary." *Sax*, 231 Minn. at 4, 42 N.W.2d at 682; *E.A.H.*, 246 Minn. at 304–05, 75 N.W.2d at 199. Since those decisions, the Legislature has changed the manner in which child support is determined. As a result, a biological mother's responsibility for child support may no longer be described as "secondary." *See* Minn.Stat. § 518A.34.

3. In a disputed child custody proceeding, the court must consider the "best interests of the child." Minn.Stat. § 518.17, subd. 1 (2010). To determine the best interests of the child, the court considers, among other things, the wishes of the child's parents, the identity of the child's primary caretaker, and the rela-

tionship between each parent and the child. *Id.* The weight that a court gives to each of these interests will clearly depend on the identity of the parents.

4. Alternatively, Marthe argues that she has standing to appeal pursuant to Minn.Stat. § 257.57. Specifically, section 257.57 provides that the mother may bring an action to determine the existence of the father-child relationship, and therefore the mother has the right to appeal an adverse decision in that action. *See* Minn.Stat. § 257.57, subds. 1–2. Because we conclude that Marthe has standing to appeal as an aggrieved party, it is not necessary to reach this issue, and we decline to do so.