*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1929
A14-1931**

In the Matter of the Welfare of the Children of:
D. L. O., R. D. J. and A. P. R., Parents.

**Filed April 13, 2015
Appeals dismissed
Bjorkman, Judge**

Dakota County District Court
File Nos. 19HA-JV-13-1637
19HA-JV-14-916

David L. Ludescher, Caitlin M. Elliot, Grundhoefer & Ludescher, P.A., Northfield, Minnesota (for appellant A.P.R.)

James C. Backstrom, Dakota County Attorney, Jennifer L. Jackson, Assistant County Attorney, Hastings, Minnesota (for respondent Dakota County Social Services Department)

Jacob Trotzky-Sirr, Guardian ad Litem Program, West St. Paul, Minnesota (guardian ad litem)

Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Bjorkman, Judge.

## U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

In these consolidated appeals, appellant-father challenges the district court's order resolving a child-protection proceeding and transferring permanent custody of his child

from respondent-mother to the paternal grandparents of the child's half-sister. Because father lacks standing to challenge the order, we dismiss the appeals.

## FACTS

Respondent D.L.O. (mother) has two daughters: A.O., born January 2011, and J.O., born August 2012. Mother and respondent R.D.J. believed that R.D.J. was the father of both children. But mother had sole legal and physical custody.

In July 2013, the children were living with mother and her boyfriend, E.V.M. On July 14, after E.V.M. physically assaulted mother and J.O., the children were placed on a health and welfare hold and subsequently placed with R.D.J. and his parents, M.J. and A.J. Respondent Dakota County Social Services (the county) investigated the incident and learned that E.V.M. likely was using heroin at the time and that both mother and E.V.M. had a history of illegal drug use. The county filed a petition alleging that A.O. and J.O. needed protection or services.

On July 31, mother admitted the petition, and the district court adjudicated the children in need of protection or services (CHIPS). The district court ordered the children to remain in the custody of R.D.J. and his parents, and directed mother to undergo chemical-dependency and psychological evaluations and follow treatment recommendations.

R.D.J. underwent paternity testing in October, which confirmed that R.D.J. is the father of J.O. but revealed that he is not A.O.'s father. In March 2014, testing revealed that appellant A.P.R. (father) is the father of A.O. Father and mother signed a recognition of parentage (ROP), and father expressed willingness to parent A.O. He was

2

subsequently added as a party to the CHIPS case. But because A.O. had experienced trauma in mother's home and had only known R.D.J. as a father, A.O. was not immediately introduced to father.

On May 23, the county filed a permanency petition, recommending that legal and physical custody of the children be transferred from mother to M.J. and A.J. The county alleged that it is not in the children's best interests to be returned to mother's home and sought the transfer of custody as a final resolution of the CHIPS case. Father denied the allegations of the transfer-of-custody (TOC) petition but did not file a competing petition. Trial was scheduled for October 23-24.

Father began supervised visits with A.O. in late June. A month later, father filed a proposed case plan in the CHIPS case and a proposed permanency plan in the TOC case. Father argued that there was no allegation or finding that A.O. is in need of protection or services as to him and requested more liberal visitation and to have A.O. united with him no later than September 1. The district court found continued placement with M.J. and A.J. to be in A.O.'s best interests. But the district court subsequently awarded father overnight visitation with A.O.

On the day of trial, mother agreed to transfer her custody of both children to M.J. and A.J. She explained that she would have agreed to transfer custody of A.O. to father "if there were a viable petition by [father]." But she stated that under the circumstances she believes transferring custody of both children to M.J. and A.J. is in the children's best interests. The guardian ad litem agreed.

3

The district court ordered the transfer of legal and physical custody of the children to M.J. and A.J., subject to mother's, father's, and R.D.J.'s visitation, and terminated its jurisdiction in the CHIPS case, "subject to reopening for purposes of amending the custody order, upon proper motion by a party." The district court further stated that father "may waive any statutory timelines and petition the court for a modification of custody of [A.O] at any time he believes it is in the best interest of the child and with the support of the child's therapist, if any." Father appeals.

## D E C I S I O N

Father argues that the district court erred by resolving the CHIPS case and transferring custody of A.O. to M.J. and A.J. without first addressing his parental fitness. And he contends that the district court's findings are insufficient to support the custody transfer. The county argues that father lacks standing to appeal the district court's order. Standing is a legal requirement at every stage of litigation, including when a party appeals a decision. *In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011). Accordingly, we turn first to the threshold issue of standing.

"Standing to appeal may be conferred by a statute or by the appellant's status as an aggrieved party." *Id.* at 513. A person has standing to appeal a final order of the juvenile court if he is "aggrieved" by the order. Minn. R. Juv. Pro. P. 47.02, subd. 1; *D.T.R.*, 796 N.W.2d at 513. A person is "aggrieved" when the order in question adversely affects his substantial right. *In re Welfare of L.L.P.*, 836 N.W.2d 563, 569 (Minn. App. 2013). We independently determine whether this requirement is met. *Id.* at 567.

4

Father contends that he is "aggrieved" because the order results in a "loss of custodial rights" and infringes on his parental rights. He cites the ROP as legal recognition that his parental status gives him fundamental rights "in A.O.'s welfare." We are not persuaded. The rights father asserts—to determine the care and control of a child—are custodial rights. *See* Minn. Stat. §§ 260C.007, subd. 10 (defining "custodian" as one legally obligated to or actually providing "care and support" for a minor), 518.003, subd. 3(a), (c) (defining "legal custody" as "the right to determine the child's upbringing, including education, health care, and religious training" and "physical custody" as "the routine daily care and control and the residence of the child") (2014); *see also Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2059-60 (2000) (discussing "the interest of parents in the care, custody, and control of their children" in determining constitutionality of statute permitting anyone to obtain visitation rights against the wishes of the custodial parent). It is undisputed that mother had sole legal and physical custody of A.O. at the time of the CHIPS adjudication. The ROP did not grant father custodial rights; it merely provided a basis for father to *seek* custody. Minn. Stat. § 257.75, subd. 3 (2014).

Father could have sought custody by timely filing his own TOC petition to oppose the county's petition.[1] Minn. R. Juv. Prot. P. 33.01, subd. 4, 35.01, subd. 1(c)(1), 42.04(a); *see also* Minn. Stat. § 260C.507(b) (2014). He declined to do so. This is not, as father asserts, a mere technical omission. As a noncustodial parent, father was not required to admit or deny the TOC petition. *See* Minn. R. Juv. Prot. P. 35.01, subd.

---

[1] As father acknowledges, any attempt to establish custody in a separate proceeding during the pendency of the CHIPS case would have been ineffective. *See* Minn. Stat. § 260C.101 (2014); *Stern v. Stern*, 839 N.W.2d 96, 100 (Minn. App. 2013).

1(c)(1). But any party, including a noncustodial parent, who disagrees with the permanent placement proposed in the county's petition "shall" file its own permanent placement petition. Minn. R. Juv. Prot. P. 33.01, subd. 4(b). Absent such a petition, the district court need only decide whether to return the children to their custodial parent or order the proposed disposition and resolve the CHIPS case. *See* Minn. Stat. § 260C.509 (2014); *see also* Minn. R. Juv. Prot. P. 42.07, subd. 2 (providing that juvenile court jurisdiction terminates upon transfer of custody). That is precisely what the district court did here.

In sum, the district court's order transferring custody of A.O. from mother to M.J. and A.J. neither deprives father of custodial rights nor denies him the opportunity to obtain custodial rights. While we recognize and applaud father's active interest in A.O.'s welfare, more is required to establish standing. Because the transfer of custody does not adversely affect any of father's substantial rights, he lacks standing to challenge the district court's order. Accordingly, we dismiss these appeals.

**Appeals dismissed.**