*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0215**

In the Matter of the Appeal by Crawford House, LLC, of the Order
Of License Revocation License Nos. 1073328 (HCBS); 1073329 (CRS),
1073330 (CRS), 1076181 (CRS).

**Filed January 22, 2024
Affirmed
Larkin, Judge**

Minnesota Department of Human Services
File No. 37988

Andrea B. Niesen, Klampe Law Firm, LLC, Rochester, Minnesota (for relator Crawford House, LLC)

Keith Ellison, Attorney General, R.J. Detrick, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Human Services)

Considered and decided by Larkin, Presiding Judge; Johnson, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Relator challenges the revocation of its licenses to provide home- and community-based services, arguing that respondent-department erred in interpreting Minn. Stat. § 245A.04, subd. 7(d) (2022), to require revocation and that its decision was based on unlawful procedure and arbitrary and capricious. We affirm.

## FACTS

This case involves two facilities—relator Crawford House LLC (Crawford) and Helen's Homes LLC—that were licensed under the Minnesota Human Services Licensing Act (the act), Minn. Stat. §§ 245A.01-.75 (2022)[1] until respondent Minnesota Department of Human Services (DHS) revoked Helen's Homes' licenses and determined that it was required to revoke Crawford's licenses based on the Helen's Homes revocation. Our recitation of the facts is based on unchallenged findings made by an administrative law judge (ALJ) in the underlying proceeding.

Spouses Nicholas Gau and Tiffany Prow each own 45 percent of Crawford. Laura Prow, who is Tiffany Prow's mother, owns the remaining 10 percent. In 2014, DHS granted Crawford four licenses authorizing it to provide home- and community-based services for adults with disabilities. Crawford's license application designated Gau as its authorized agent and compliance officer, and DHS identified him as a controlling individual for Crawford.[2]

Laura Prow was a controlling individual for Helen's Homes until 2015, when DHS determined her responsible for maltreatment and disqualified her from direct contact with service recipients. After Laura Prow was disqualified, Gau became the sole owner and

---

[1] In 2023, the legislature amended the provisions of the act, including the specific provision at issue in this appeal. *See* 2023 Minn. Laws ch. 61, art. 7, § 1 (amending Minn. Stat. § 245A.04, subd. 7(d) (2022)). Those amendments took effect July 1, 2023, *see* Minn. Stat. § 645.02 (2022), and no party asserts that the amendments apply retroactively. We thus apply the version of the act in effect at the time of the final administrative decision.

[2] Gau was a "controlling individual" of Crawford by virtue of his role as manager of Crawford. *See* Minn. Stat. § 245A.02, subd. 5a(a), 5a(a)(2)-(4).

authorized agent of Helen's Homes. In February 2020, in a separate action, DHS took action to revoke Helen's Homes' license based on conditional-license violations and failure to comply with licensing laws and rules. That license revocation became final in September 2021.

On November 5, 2021, DHS issued an order revoking Crawford's licenses. The order stated that revocation of Crawford's licenses was required under the act because Helen's Homes' licenses had been revoked, and Gau was the controlling individual for both Helen's Homes and Crawford.

Crawford appealed DHS's order, and the matter proceeded to a contested-case hearing before an ALJ. The ALJ concluded that the act did not authorize the revocation of Crawford's licenses and recommended that DHS rescind Crawford's revocation. The commissioner of human services rejected the ALJ's recommendation and issued a final order affirming the license revocation.

Crawford appeals.

## DECISION

When reviewing an agency decision in a contested case, this court may reverse or modify the decision

> if the substantial rights of the petitioners may have been
> prejudiced because the administrative finding, inferences,
> conclusion, or decisions are:
>     (a) in violation of constitutional provisions; or
>     (b) in excess of the statutory authority or jurisdiction of
>     the agency; or
>     (c) made upon unlawful procedure; or
>     (d) affected by other error of law; or

3

> (e) unsupported by substantial evidence in view of the entire record as submitted; or
>
> (f) arbitrary or capricious.

Minn. Stat. § 14.69 (2022). A relator has the burden of proof when challenging an agency decision. *In re Excelsior Energy, Inc.*, 782 N.W.2d 282, 289 (Minn. App. 2010).

## I.

Crawford contends that DHS erred and exceeded its authority by interpreting the act, and particularly Minnesota Statutes section 245A.04, subdivision 7(d), to require revocation of Crawford's licenses. This argument raises an issue of statutory interpretation, which we review de novo. *In re SIRS Appeals by Trinity Home Health Care Servs.*, 996 N.W.2d 178, 184 (Minn. 2023).

The purpose of statutory interpretation is to "ascertain and effectuate" the legislature's intent. Minn. Stat. § 645.16 (2022). "If the Legislature's intent is clear from the unambiguous language of the statute, we apply the plain meaning of a statutory provision." *In re Schmalz*, 945 N.W.2d 46, 50 (Minn. 2020) (quotation omitted). A statute is unambiguous if, as applied to the facts of a case, it is not "susceptible to more than one reasonable interpretation." *A.A.A. v. Minn. Dep't of Hum. Servs.*, 832 N.W.2d 816, 819 (Minn. 2013).

Under the act, the commissioner may revoke a license if "revocation is required under section 245A.04, subdivision 7, paragraph (d)." Minn. Stat. § 245A.07, subd. 3(a)(5). Minnesota Statutes section 245A.04, subdivision 7(d), generally governs the grant and reissuance of licenses. However, the final paragraph of subdivision 7(d) governs—in part—license revocation, providing:

4

When a license issued under this chapter is revoked under clause (1) or (3), the license holder and controlling individual may not hold any license under chapter 245A for five years following the revocation, and other licenses held by the applicant, license holder, or controlling individual shall also be revoked.

Minn. Stat. § 245A.04, subd. 7(d). Relevant here is clause (3), which provides that the commissioner "shall not issue or reissue a license if the applicant, license holder, or controlling individual has . . . had a license issued under this chapter revoked within the past five years." *Id.*, subd. 7(d)(3).

The terms "applicant," "license holder," and "controlling individual" are defined by the act. An "[a]pplicant" is "an individual, organization, or government entity . . . that has applied for but *not yet been granted a license* under this chapter." Minn. Stat. § 245A.02, subd. 3 (emphasis added). A "[l]icense holder" is "an individual, organization, or government entity that is legally responsible for the operation of the program or service, *and has been granted a license* by the commissioner under this chapter and the rules of the commissioner." *Id.*, subd. 9 (emphasis added). A "[c]ontrolling individual" is "an owner of a program or service provider licensed under this chapter" and, in relevant part, "the individual designated as the authorized agent" and "the individual designated as the compliance officer." *Id.*, subd. 5a(a)(2), (3).

With these defined terms in mind, we read the final paragraph of subdivision 7(d) to contain three parts, each of which has a plain application to the facts of this matter. The first part of the final paragraph applies to circumstances in which "a license issued under this chapter is revoked under clause (1) or (3)." Minn. Stat. § 245A.04, subd. 7(d).

5

Crawford does not dispute DHS's contention that the license for Helen's Homes had been "revoked within the past five years." *Id.*, subd. 7(d)(3).

The second part of subdivision 7(d) provides that "the license holder and controlling individual may not hold any license under chapter 245A for five years following the revocation." *Id.*, subd. 7(d). "[T]he license holder and controlling individual" refers back to the license revocation referenced in the first part. Thus, the relevant license holder in this matter is Helen's Homes, and the relevant controlling individual is Gau.

The third part of subdivision 7(d) provides that "other licenses held by the applicant, license holder, or controlling individual shall also be revoked." *Id.* "[O]ther licenses" plainly refers to a license other than the one that was "revoked within the past five years," in this case, a license other than Helen's Homes' license. *Id.*, subd. 7(d)(3). The terms "license holder, or controlling individual" refer back to "license holder and controlling individual" in the second part. *Id.*, subd. 7(d). Thus, in this matter, DHS was required to revoke any licenses, other than the Helen's Homes' license, "held" by Gau because he was a controlling individual for Helen's Homes.

Crawford does not dispute that Helen's Homes' license was revoked within five years before DHS revoked Crawford's licenses and that Gau was a controlling individual for Helen's Homes. But Crawford argues that DHS exceeded its authority by revoking Crawford's licenses because those licenses were not "held" by Gau.

Because the term "held" is not defined in the act, and no party claims that it is a technical term, we may rely on dictionary definitions to determine its meaning. *See* Minn. Stat. § 645.08(1) (2022); *In re NorthMet Project Permit to Mine Application*, 959 N.W.2d

6

731, 757 (Minn. 2021). Held is the past tense of hold, which Merriam-Webster's defines as follows: "to have possession or ownership of or have at one's disposal." *Merriam-Webster's Collegiate Dictionary* 592 (11th ed. 2014). "Hold" is also defined as "[t]o maintain control over." *The American Heritage Dictionary of the English Language* 837 (5th ed. 2018). These definitions are consistent with the use of the verb "held" in subdivision 7(d) because a license authorizes the operation of the licensed facility, and a controlling individual of that facility, such as an owner or authorized agent, would normally have control over its operation. *See* Minn. Stat. § 245A.03, subd. 1 ("Unless licensed by the commissioner under this chapter, an individual, organization, or government entity must not . . . operate a residential or a nonresidential program."). In that way, a controlling individual has the license at his disposal and controls the license.

Under the commonly understood meanings of the verb "hold," we have no difficulty concluding that Gau "held" Crawford's licenses. It is undisputed that, at the time of the Crawford's license revocation, Gau owned 45 percent of Crawford. In addition, Crawford's license application identified Gau as Crawford's authorized agent and compliance officer. In these roles, Gau had Crawford's licenses at his disposal, as well as control over them in the operation of Crawford's licensed programs. Thus, Gau "held" those licenses within the meaning of subdivision 7(d). Revocation was therefore mandatory based on Gau's status as a controlling individual of Helen's Homes, which had its license revoked within the past five years. *See* Minn. Stat. § 245A.04, subd. 7(d).

Crawford contends that, because the act defines the term "license holders" to mean those who have been granted a license, it follows that only those who have been granted

7

licenses may "hold" licenses within the meaning of subdivision 7(d). Notwithstanding the similarity in terminology used, a contextual review of the statutory language leads us to reject Crawford's assertion. As DHS explains, subdivision 7(d) requires revocation of "*other* licenses held by the . . . controlling individual." *Id.* (emphasis added). The use of the word "other" indicates that the underlying, revoked license was "held" by the controlling individual, even though that individual was not the "license holder." This supports our conclusion that a license may be "held" by a controlling individual even if they are not the "license holder."

In sum, we conclude that DHS did not err in interpreting subdivision 7(d) to require revocation of Crawford's licenses.

**II.**

Crawford alternatively contends that DHS failed to give Gau proper notice of its revocation of those licenses under Minn. Stat. § 245A.07, subd. 3(a), which provides:

> A license holder who has had a license issued under this chapter suspended, revoked, or has been ordered to pay a fine must be given notice of the action by certified mail or personal service. If mailed, the notice must be mailed to the address shown on the application or the last known address of the license holder. The notice must state in plain language the reasons the license was suspended or revoked, or a fine was ordered.

Crawford argues that if DHS's statutory interpretation is accepted, then its "final order necessarily violates Minnesota Statutes section 245A.07, subdivision 3(a), as it did not provide [Gau] notice of the November 5, 2021 Order of License Revocation to

8

[Crawford].”  Crawford further argues that the statutory notice, “with a right to be heard by Helen’s Homes, LLC or [Gau], is still required.”

Crawford’s limited briefing on this issue does not address—much less explain—why Crawford has standing to assert an alleged violation of Helen’s Homes’ and Gau’s rights to statutory notice.  “Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court.”  *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996).  “Standing is a jurisdictional doctrine, and the lack of standing bars consideration of the claim by the court.”  *In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011).

Because Crawford has made no attempt to establish that it has standing to seek relief on behalf of Helen’s Homes and Gau in this appeal, we do not consider Crawford’s statutory-notice argument.

**III.**

Crawford contends that DHS’s revocation decision was arbitrary and capricious. An agency’s decision is “arbitrary or capricious when it represents the agency’s will and not its judgment.”  *Schmalz*, 945 N.W.2d at 54 (quotation omitted).  A decision is arbitrary and capricious when (1) the agency “relied on factors not intended by the legislature,” (2) the agency “entirely failed to consider an important aspect of the problem,” or (3) “the decision is so implausible that it could not be explained as a difference in view or the result of the agency’s expertise.”  *Id.* (quotation omitted).  A finding that lacks substantial evidentiary support is arbitrary and capricious if the agency “offered an explanation that runs counter to the evidence.”  *Id.* (quotation omitted).

Crawford asserts that "the explanation offered for the revocation runs counter to the evidence in the record." Given the plain language of subdivision 7(d), and the relevant undisputed facts, DHS's explanation for the revocation is consistent with the record evidence.

Crawford also asserts that DHS's decision was arbitrary and capricious because it was not based on "fair conduct." Specifically, Crawford complains that DHS "failed to provide [Crawford] an opportunity to maintain its license" and that DHS "failed to establish any rational relation" between the revocation of the Helen's Homes' license and "the health, safety and rights of the persons served by [Crawford]." But the plain language of subdivision 7 does not require DHS to provide an opportunity to avoid revocation or to show such a "rational relation." Instead, the plain language of subdivision 7 mandates revocation if the circumstances described in subdivision 7(d) exist. *See* Minn. Stat. § 245A.04, subd. 7(d) (stating that other licenses "shall also be revoked"); Minn. Stat. § 645.44, subd. 16 (2022) ("'Shall' is mandatory."). In sum, Crawford does not persuade us that DHS's decision to revoke Crawford's licenses was arbitrary and capricious.

**Affirmed.**